Lester A. MEIS et al.,
Plaintiffs-Appellees,

v.

SANITAS SERVICE CORPORATION
et al., Defendants-Appellants.

No. 74–1184.

United States Court of Appeals,
Fifth Circuit.

April 18, 1975.

Richard H. Caldwell, Houston, Tex.,
James F. Buchanan, Corpus Christi, Tex.,
for defendants-appellants.

656

Phillip J. Tibiletti, Victoria, Tex., Patrick F. McGowan, Dallas, Tex., for plaintiffs-appellees.

Before BROWN, Chief Judge, and MURRAH * and WISDOM, Circuit Judges.

MURRAH, Circuit Judge:

█ The sole issue in this interlocutory appeal is the propriety of the trial court's temporary injunction (Fed.R. Civ.P. 65(b)) in a suit under the antifraud sections and applicable regulation of the federal Securities Acts of 1933 and 1934,[1] the Texas common law, and Section 27.01 of the Texas Business and Commerce Code, V.T.C.A. In this suit, appellees seek to rescind a corporate merger contract between the parties whereunder the appellant acquired all the assets of the appellees in exchange for appellant's common stock. They further seek concomitant restoration of their properties or, in the alternative, money damages for the value of the stock at the time of the merger and punitive damages. A jury trial was requested. At this stage of the proceedings they assume the burden of making out a prima facie case for a status quo temporary injunction.

█ This court has often had occasion to consider the propriety of a Rule 65 temporary injunction under a variety of facts and circumstances. Each case must stand on its own facts, based upon the generally accepted notion that the purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits.[2]

"It requires a balancing of the probabilities of ultimate success on the merits with the consequences of court intervention at a preliminary stage. The prerogative to weigh the nice distinctions involved belongs to the district court, not this court." Sargent v. Genesco, 492 F.2d 750, 770 and cases there (5th Cir. 1974); Mercury Motor Express v. Norman C. Brinke, 475 F.2d 1086, 1095 (5th Cir. 1973); American Radio Association v. Mobile Steamship Association, Inc., 483 F.2d 1, 4 (5th Cir. 1973). The appellant insists that the temporary injunction is defective because the trial court made no specific finding that the appellee was likely to succeed on the merits. But we think a prima facie showing is legally sufficient in this case and that the requisite findings are implicit in the status quo memorandum and order.

Some background will be helpful to a consideration of the question as it comes to us. The appellant, Sanitas Service Corporation, is a multi-service conglomerate with headquarters in Hartford, Connecticut, operating through wholly owned subsidiaries in a number of large cities throughout the country. It is engaged in a wide variety of services including solid waste control operations, the provision of dust control products, a complete janitorial service for industrial facilities, and the renting and cleaning of linens, uniforms, work garments, and industrial wiping towels. For the past twenty years the appellees, Texas Sanitation Company, Inc., and Janitorial Services, Inc., have owned and operated a pest control and sanitation business and janitorial service in a number of counties in south Texas, headquartered in Victoria, with about sixty employees and revenues of approximately $350,000 to $400,000. The Meis family is the prin-

---

* Senior Circuit Judge of the Tenth Circuit sitting by designation.

1. See §§ 12(2) and 17(a) Securities Act of 1933, 15 U.S.C. §§ 77l and 77q; and § 10(b) Securities and Exchange Act of 1934, 15 U.S.C. § 78j and regulation 17 C.F.R. § 240.-10b–5. For jurisdiction, see § 22 Securities Act of 1933, 15 U.S.C. § 77v.

2. See Wright and Miller, Federal Practice and Procedure § 2947; Moore's Federal Practice, § 65.04(1). See also "Probability of Ultimate Success Held Unnecessary for Grant of Interlocutory Injunction," 71 Columbia Law Review 165; Special Problems of the Preliminary Injunction and the Temporary Restraining Order, 70 Harvard Law Review 996, 1056.

cipal stockholder, and Meis is the president and general manager.

In the summer of 1971 Meis learned of Sanitas and its expanding program, and on request, was provided with a 1970 and 1971 annual report containing financial statements. Ensuing negotiations resulted in a merger contract in October, 1971. Under the terms of this contract, Sanitas acquired all the assets of Texas Sanitation Company, Inc., and Janitorial Services, Inc., in exchange for 34,000 shares of Sanitas stock, having an agreed value of $10 per share. Meis continued to manage the companies under a three-year executive employment contract, very much as before the merger.

According to the allegations of the verified complaint and the documentary and live testimony at the injunction hearing, Sanitas suffered losses in 1971, reported in 1972, ultimately resulting in a precipitous decline in the listed price of Sanitas common stock from approximately $10 to $3 per share and a suspension of trading on the American Stock Exchange. Contemporaneously with these events, Sanitas challenged some of the expenditures by Meis and threatened to terminate the employment contract unless the irregularities were immediately corrected. In these circumstances Meis brought this suit claiming that he had been induced to consummate the merger by misrepresentations in the annual reports and oral statements during the negotiations for the merger. He emphasizes the representations in the flamboyant 1971 report concerning the condition of the Economy Linen Service, an industrial laundering subsidiary in Detroit, Michigan. The report recited that a five month strike had been resolved in April of 1971, and that with the completion of a major equipment installation program resulting in operational efficiency in production capacity, substantial gains in the operations from these modernized facilities were anticipated.

■ By reference to the financial statements in the annual reports of the fiscal years 1971 and 1972, appellees presented proof tending to show that significant losses were incurred at the Detroit laundry facility in the fiscal year 1971 while negotiations for the merger were underway; that such losses were not disclosed until the report of June 30, 1972, after the merger had been consummated; and that Sanitas knew of the losses and failed to disclose them to the public or to Meis. He says he relied to his detriment on Sanitas' failure to disclose these losses, which ultimately resulted in the permanent closing of the Detroit industrial laundry after a loss of 1.9 million dollars.

Sanitas insists that the representations and financial statements in the reports are in accordance with accepted accounting procedures and are in no way untrue or misleading. This may well be true, but we can not be sure on the abbreviated record before us that the reports and oral communications before the consummation of the merger did not include "an untrue statement of a material fact or [omitted] to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading . . . ." Section 12 of the Securities Act of 1933, 15 U.S.C. § 77*l*(2). We leave the final determination of that crucial issue to the trial on the merits, confident that the trial court or the jury, as the case may be, will scrutinize the representations in the reports in consonance with the statutory requirements. It suffices that the plaintiff's case is not insubstantial.

■ Invoking the clean hands doctrine, appellant would bar the appellees from equitable relief for irregularities in the conduct of the business in Meis' managerial capacity. There was proof, inconclusive on this record, that Meis did use company funds to pay personal obligations. The trial court took due note of the clean hands doctrine and admitted evidence of the post-merger irregularities but rejected the effect of it, in accordance with Keystone Driller Co. v. General Excavator Co., 290 U.S. 240, 54 S.Ct. 146, 78 L.Ed. 293 (1933), because such alleged irregularities bear no rela-

tion to the consummation of the merger agreement, the subject matter of the suit. After all, "Equity does not demand that its suitors shall have led blameless lives." Loughran v. Loughran, 292 U.S. 216, 229, 54 S.Ct. 684, 689, 78 L.Ed. 1219 (1934). The court concluded that the plaintiffs were entitled to maintain this equitable action for rescission. And see Occidental Life Insurance Company of North Carolina v. Ryan and Associates, Inc., 496 F.2d 1255, 1268 (4th Cir. 1974); Johns Hopkins University v. Hutton, 488 F.2d 912 (4th Cir. 1973), cert. denied, 416 U.S. 916, 94 S.Ct. 1623, 40 L.Ed.2d 118 (1974). For the purposes of this appeal, we agree. The parties must stand or fall on the evidence of preconsummation conduct.

The court found that the plaintiffs, including Sephus Clifton, Jr., (not an original party to this suit) have tendered the 34,000 shares of Sanitas stock into the registry of the court. It specifically found that, due to the personal nature of the Victoria operations having been operated for a number of years under the direction of Meis, irrevocable injury would be suffered by the plaintiffs should Meis be removed from management, and thereafter on trial of the merits be successful in rescinding the merger. The court went on to find, however, that since the merger agreement, Meis had handled the affairs of the business and its funds in a very informal manner and not at all in accord with good corporate business practices and that the defendants were justified in being dissatisfied with Meis in this regard.

█ The court proceeded to mold the temporary decree to the peculiar circumstances of the case.[3] To preserve the status quo, it enjoined Sanitas from (1) removing Meis as president and general manager of the two local corporations, (2) altering the authority of Meis to con-

tinue the management of the normal business of the corporation, (3) removing any of the assets, books and records from the corporation which belonged to it immediately prior to the merger that are now being kept in the day to day operation of the business, and (4) refusing to pay him for services as agreed in the management contract, subject, however, to strict compliance with the limitations placed on Meis. And it enjoined Meis from (1) destroying any of the records, notes or memoranda of either corporation, (2) in any way handling corporate assets except as may be reasonably necessary in the ordinary course of business and in accordance with good corporate business practices, (3) exercising authority over the Victoria operations except in regard to the payment of salaries and the day to day operating expenses, and (4) interfering with the relationship between the local companies and the customers who were doing business with the companies before the merger and "this limitation is to be strictly construed."

The court expressly permitted Sanitas to have a representative present on the premises of the local companies during normal business hours or while business is being transacted on the premises and provided that such representative may, from time to time, review the books and records of the operations so long as the representative acts reasonably and does not interfere with normal operations. Sanitas was enjoined from interfering with the business in regard to customer relations or causing the loss of business by the manner in which any representative of Sanitas might supervise the business operations. Meis was required to file a bond with corporate surety to be approved by the court in the sum of $25,000 conditioned for the payment of such cost and damages which may be

---

3. "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconcilia-

tion between the public interest and private needs as well as between competing private claims." Hecht Co. v. Bowles, 321 U.S. 321, 329–330, 64 S.Ct. 587, 592, 88 L.Ed. 754 (1944). Quoted in Lemon v. Kurtzman, 411 U.S. 192, 200, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973).

incurred or suffered by the defendants in the event it is finally held that they have been improperly enjoined or restrained. Hedged by these restrictions imposed on both parties, the status quo is insured. No irreparable harm can result until the trial on the merits. The temporary injunction is accordingly sustained.

Affirmed.