In the Matter of the Dissolution of WIEDY'S FURNITURE CLEAR-ANCE CENTER COMPANY, INC., and Other Corporations. BRUCE R. WIEDERSPIEL, Respondent-Appellant; EDWARD WIEDERSPIEL, JR., et al., Appellants-Respondents.

Third Department, April 25, 1985

APPEARANCES OF COUNSEL

*Rusk, Wadlin, Heppner & Martuscello* (*George Rusk, Jr.,* of counsel), for appellants-respondents.

*McNamee, Lochner, Titus & Williams, P. C.* (*George F. Carpinello* of counsel), for respondent-appellant.

## OPINION OF THE COURT

WEISS, J.

This case involves several closely held New York corporations established by members of the Wiederspiel family for purposes of owning and operating retail furniture stores. The parties are Edward Wiederspiel, Jr., his wife, Marie Wiederspiel, and their two sons, Edward Wiederspiel, III, and petitioner Bruce R. Wiederspiel. Each of the individual stores are operated by Edward, Jr., and Marie and named Wiedy's Furniture Company, Inc., Wiedy's of Poughkeepsie, Inc., and Wiedy's Furniture of Middletown, Inc. A separate corporation, Wiedy's Real Estate Corporation, was formed to manage the real estate upon which the several stores are located.

It is not disputed that petitioner has been actively engaged in the family business for most of his adult life, except for a brief period from May 1973 to March 1974 when he moved to Florida to pursue an independent career. Upon his return in 1974, a new corporation, the Wiedy Furniture Clearance Center Company, Inc. (Clearance Center), was formed, with two thirds of the voting shares held by Wiedy's Furniture Company, Inc., and the remaining one third held by petitioner, who assumed management duties. Petitioner continued to manage the Clearance Center until July 1983, when, after a dispute with his father over petitioner's hiring of an employee, petitioner was discharged as an officer and employee of all the family corporations, was locked out of the Clearance Center and threatened with criminal prosecution if he trespassed upon any of the corporate properties. Respondents also published a notice in local newspapers disassociating petitioner from all the family businesses.

Based upon these allegations and a further contention that the separate corporations were in reality treated as a single entity, petitioner, as a minority shareholder, commenced the instant proceeding pursuant to Business Corporation Law

§ 1104-a seeking judicial dissolution of all the family corporations.* Petitioner also sought discovery of all corporate books and records and to impose a receivership upon the assets of all the corporations. Respondents moved to dismiss the petition as to all the corporations, except the Clearance Center, on the ground that petitioner did not own the requisite 20% of the voting stock in the respective corporations. During the pendency of this proceeding, petitioner obtained a temporary restraining order prohibiting the majority shareholders from proceeding with a voluntary dissolution of the Clearance Center. Ultimately, Special Term concluded that the actions toward petitioner constituted oppressive conduct within the scope of section 1104-a. As an alternative to dissolution, Special Term appointed an independent appraiser to determine the fair value of petitioner's one-third share of the Clearance Center, which was to be awarded to him. Special Term dismissed the petition as to the remaining corporations since petitioner failed to demonstrate ownership of the requisite 20% share of voting stock and denied petitioner's motion for discovery. These cross appeals ensued.

■ Initially, we note that Special Term properly dismissed the petition as against all the corporations other than the Clearance Center. Section 1104-a provides a mechanism by which the holders of at least 20% of the outstanding voting shares of an unlisted close corporation may petition for its dissolution due to mistreatment of the complaining shareholders or misappropriation of corporate assets (§ 1104-a [a] [1], [2]). It is undisputed that petitioner did not own 20% of the voting stock in any corporation other than the Clearance Center. Even accepting petitioner's thesis that the corporations constituted a single entity, a review of the record establishes that petitioner owns far less than the necessary 20% of the aggregate voting stock in the corporations. Notwithstanding petitioner's claim that he was deceived by his parents as to his interest in Wiedy's Real Estate Corporation, in which he owns 100 shares of nonvoting common stock, the fact remains that petitioner has met the statutory prerequisite of a 20% voting interest only as to the Clearance Center. Thus, the petition was properly dismissed as to the remaining corporations.

■ Next, we agree with Special Term's conclusion that petitioner has been subjected to oppressive conduct as delineated in section 1104-a (a) (1). In *Matter of Kemp & Beatley* (*Gardstein*) (64 NY2d 63, 73), the Court of Appeals recently examined the nature of oppressive conduct within the context of § 1104-a and

* All citations to statutes herein are to the Business Corporation Law.

concluded "that utilizing a complaining shareholder's 'reasonable expectations' as a means of identifying and measuring conduct alleged to be oppressive is appropriate". Mere disappointment in the results of a venture is not sufficient. Rather, the statutory protection is more dramatic, and "oppression should be deemed to arise only when the majority conduct substantially defeats expectations that, objectively viewed, were both reasonable under the circumstances and were central to the [minority shareholder's] decision to join the venture" (*supra*, p 73; *cf. Matter of Dubonnet Scarfs*, 105 AD2d 339, 343).

Applying this standard, we easily conclude that respondents' conduct in discharging petitioner from participation in all the family corporations was oppressive. In 1974, petitioner returned to the family business with a reasonable expectation of being actively involved in the management and operation of the newly formed Clearance Center. Although the exact amount of the capital contribution is disputed, petitioner utilized his own funds in getting this new venture underway, not simply as an investment, but to provide employment and a future for himself. The record shows that until his discharge, petitioner had turned the Clearance Center into a highly profitable venture. Given this background, petitioner's reasonable expectations as a minority shareholder were clearly frustrated by the discharge. Nor was Special Term obligated to conduct a hearing into the factual allegations of oppression since, as respondents conceded at oral argument, it is undisputed that as a result of the dispute with his father, petitioner was dismissed as an employee and locked out of the Clearance Center, ordered off the remaining corporate premises and publicly disassociated from the family business. Simply stated, petitioner has been "frozen out" (*see, Matter of Topper v Park Sheraton Pharmacy*, 107 Misc 2d 25, 27-28) or "squeezed out" (*see, O'Donnel v Marine Repair Servs.*, 530 F Supp 1199, 1205) of the corporation for no legitimate reason other than family animosity. This is precisely the type of situation that section 1104-a (a) (1) was designed to alleviate (*see, Matter of Kemp & Beatley [Gardstein], supra*, p 72).

We turn finally to the remedy propounded by Special Term. Whether dissolution constitutes an appropriate remedy rests within the sound discretion of the court considering the application (*see,* § 1111 [a]). By statute, courts are instructed to consider whether "liquidation of the corporation is the only feasible means" to protect the petitioner's interests and whether dissolution "is reasonably necessary" to protect "the rights and interests of any substantial number of shareholders or of the petitioner" (§ 1104-a [b] [1], [2]). Contrary to respondents' interpre-

tation of an all or nothing approach to dissolution, upon a finding of oppressive conduct, "consideration must be given to the totality of circumstances * * * to determine whether some remedy short of or other than dissolution constitutes a feasible means" of resolving the dispute (*Matter of Kemp & Beatley [Gardstein], supra,* p 73; *see also, Muller v Silverstein,* 92 AD2d 455, 456). In essence, "[a] court has broad latitude in fashioning alternative relief" (*Matter of Kemp & Beatley [Gardstein], supra,* p 74).

■ This is precisely the authority Special Term has exercised in directing respondents to compensate petitioner for the value of his interest in the Clearance Center as determined by an independent appraiser, in lieu of a corporate dissolution. In our view, this remedy accommodates the interests of both parties by assuring that petitioner receives full credit for his ownership interest in the Clearance Center, and not just one third of the value of the remaining inventory, while respondents will be free to voluntarily dissolve the corporation after compensating petitioner, should they so choose. That respondents have not asserted their right to repurchase petitioner's shares (§ 1118 [a]) does not preclude Special Term from directing a buy-out of petitioner's interest in the Clearance Center (*see, Matter of Kemp & Beatley [Gardstein], supra,* p 75; *Gimpel v Bolstein,* 125 Misc 2d 45, 56, n 11). In our view, after hearing opposing counsel on the petition, the remedy fashioned by Special Term was in all respects proper.

MAIN, J. P., MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Order affirmed, without costs.