**Ralph R. STEFANO, C. Harold Gillam, and Estate of Robert L. Crow, Appellants,**

v.

**Patricia M. COPPOCK, Appellee.**

No. S–453.

Supreme Court of Alaska.

Aug. 23, 1985.

David Shimek, Shimek & Peabody, Anchorage, for appellants.

Olof K. Hellen, Hellen, Partnow & Condon, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MOORE, Justice.

This is an appeal from a superior court judgment in favor of a minority shareholder's claim of fraud and oppression by the controlling shareholders of a closely held corporation. As a remedy, the superior court ordered the controlling shareholders to buy out the minority shareholder's stock based on its "fair and equitable value."

## I. SUMMARY OF FACTS AND PROCEEDINGS

In 1961 Stefano, Gillam and Crow (hereinafter "the shareholder-directors") formed Alaska Plastics, Inc.; each held 300 shares of stock in the corporation and all three served as directors. The corporation also employed Gillam as general manager at an annual salary of approximately $12,000.

In 1970 Crow was divorced from his wife, Patricia Coppock, the appellee (now known as Patricia Muir). As a substantial part of her divorce settlement, she received half of his Alaska Plastics shares, which he estimated to be worth about $20,000 then.

In 1971 the corporation held a shareholders' meeting, but the shareholder-directors did not provide Muir with notice of that meeting. At that meeting the shareholder-directors decided that each director would receive an annual meeting fee of $3,000 plus travel and per diem expenses. Since Muir was the only non-director, she did not receive the $3,000 meeting fee. At that same meeting the salary of the corporation's general manager was informally increased to $30,000 per year.[1] Additionally, the shareholder-directors decided to buy an airplane for the general manager's use.

In 1972 Alaska Plastics held a shareholders' meeting, in Seattle, and again did not notify Muir. In 1973 the corporation held another shareholders' meeting and did not give Muir notice until three hours before the meeting. In 1974 the shareholder-directors again failed to notify Muir of the shareholders' meeting. During the 1974 meeting the shareholder-directors decided to acquire another business (Valley Plastics, Inc.) as a wholly owned subsidiary in which they would be the sole directors and officers.

In mid-1974 Muir consulted an attorney, who subsequently wrote to the directors asking to inspect the corporate records on Muir's behalf. The directors did not re-

---

1. This salary increase was formally ratified by the directors three years later.

spond, nor did they respond to her attorney's second letter demanding inspection. Soon after the directors had received Muir's requests for inspection they decided to offer her $15,000 to buy out her ⅙ interest (150 shares) in Alaska Plastics. This buy-out amount was apparently derived from the corporation's net worth during the previous and less lucrative year. The controlling shareholder-directors now acknowledge that they made an error in calculation; even a calculation based on the lower "book value" of Muir's shares at that time would have yielded the figure of $130 per share, rather than the $100 per share offered by the corporation.

In 1975 Alaska Plastics offered Muir $20,000 for her shares. She rejected that offer. Her accountant then examined Alaska Plastics' financial records, and estimated that her stock was worth between $23,000 and $40,000 in 1974. Muir notified the corporation's directors that she wanted $40,000 for her interest in Alaska Plastics. The directors refused, informing Muir that she could buy them out for a total price of $200,000. Muir filed suit against Alaska Plastics and its shareholder-directors. Ultimately, the court entered judgment in Muir's favor, following an advisory jury decision that $32,000 would be a fair price for Alaska Plastics to buy out Muir's shares. The defendants appealed that judgment to this court, leading to our decision in *Alaska Plastics, Inc. v. Coppock,* 621 P.2d 270 (Alaska 1980). We remanded the case because the superior court had not made the necessary findings and conclusions. In 1984 the superior court issued its findings and conclusions, and entered a $32,000 judgment for Muir as the fair and reasonable value of her share of the corpo-

ration. The controlling shareholder-directors appealed.

## II. DISCUSSION

■ The controlling shareholder-directors argue that the record does not support the superior court's findings of oppressive or fraudulent conduct sufficient to warrant a remedy as "drastic" as involuntary dissolution of the corporation or a forced buy-out of Muir's shares. We disagree. The appellants actually concede more than enough evidence to support the conclusion that they were unfair in their dealings with the unwelcome newcomer in their corporation.

■■ They also argue that, even if the record does support the superior court's findings, the judgment is nevertheless erroneous because, in their view, our *Alaska Plastics* opinion precludes the superior court from ordering the controlling shareholders to buy out Muir's shares at an equitable price.[2] Again we disagree.

In *Alaska Plastics* we stated that in order for the minority shareholder to warrant a forced buy-out of her shares, she must establish on remand that the actions of the controlling shareholders "were 'illegal, oppressive or fraudulent,' AS 10.05.-540(2), or alternatively, constituted a waste or misapplication of corporate assets." *Alaska Plastics,* 621 P.2d at 275. Because the trial court had not yet reached this issue, we expressed no opinion at that time as to whether Muir had satisfied the standards of AS 10.05.540. On remand, however, the superior court did find that the appellants' conduct was oppressive and that the requisites of AS 10.05.540(2) were met.

. . . .

2. The appellants also argue that corporate liquidation was the only remedy available to the superior court, pursuant to AS 10.05.540, which provides that:

> In an action by a shareholder, the superior court may liquidate the assets and business of a corporation when it is established
>
> . . . .
>
> (2) that the acts of the directors or those in control of the corporation are illegal, oppressive or fraudulent;

This is a remedial statute, and it merely states that a superior court "may" order the liquidation of a corporation in the types of situations listed. This statute does not deprive the superior court of its *equitable* authority to fashion appropriate remedies. *See Alaska Plastics,* 621 P.2d at 274.

It is clear that AS 10.05.540(2) allows the superior court to liquidate a corporation when it is shown that the acts of those in control are oppressive or fraudulent.[3] However, courts retain equitable authority to fashion a less drastic remedy to fit the parties' situation. *Alaska Plastics v. Coppock*, 621 P.2d at 275; *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 507 P.2d 387, 395–96 (1973).

The controlling shareholder-directors now claim that the buy-out remedy is *not* "less drastic" than liquidation and that the court is limited by statute to liquidation as a remedy. Again, AS 10.05.540(2) is a remedial statute that does not preclude all other equitable remedies. Moreover, we are not persuaded that ordering a buy-out of an oppressed minority shareholder's interest is more drastic than ordering the death of the corporation. From the controlling shareholders' point of view, the buy-out may be more costly, but such a remedy provides an effective means of fairly compensating the aggrieved shareholder here. The buy-out remedy fits the situation in this case.

The appellants also argue that the superior court erred in awarding $23,431 in prejudgment interest dating back to 1974, when Muir's cause of action apparently arose. We disagree. Prejudgment interest may accrue from the date of injury. *Farnsworth v. Steiner*, 638 P.2d 181 (Alaska 1981); *State v. Phillips*, 470 P.2d 266 (Alaska 1970). Since much of the controlling shareholders' unfair conduct toward Muir began before 1974, the superior court could reasonably select that year for the accrual of prejudgment interest in this case. We find no merit in the controlling shareholders' argument that the prejudgment interest award is inappropriate because they did not have "the use" of Muir's stock during the period dating back to 1974. It was their unfair conduct that denied Muir the full benefit of her stock.

Finally, the controlling shareholders correctly point out that the superior court erred in awarding Muir $20,000 in attorney's fees without explaining its deviation from the schedule of fees set forth in Rule 82.

Therefore, the judgment of the superior court is AFFIRMED except as to the award of attorney's fees. This case is REMANDED to the superior court on this one issue; the superior court shall either explain the deviation from the Civil Rule 82 schedule of fees or enter a new award in keeping with that schedule.

---

3. Oppressive conduct within the corporate context can be complicated and sometimes difficult to discern. We favor the view recently expressed by the New York Court of Appeals in coping with the difficulty of defining such oppression.

> The question has been resolved by considering oppressive actions to refer to conduct that substantially defeats the "reasonable expectations" held by minority shareholders in committing their capital to the particular enterprise.... A shareholder who reasonably expected that ownership in the corporation would entitle him or her to a job, a share of corporate earnings, a place in corporate management or some other form of security would be oppressed in a very real sense when others in the corporation seek to defeat those expectations and there exists no effective means of salvaging the investment.

In the *Matter of the Judicial Dissolution of Kemp & Beatley, Inc.*, 64 N.Y.2d 63, 484 N.Y.S.2d 799, 805, 473 N.E.2d 1173, 1179 (1984) (citations omitted). *See also Graham v. Mimms*, 111 Ill. App.3d 751, 67 Ill.Dec. 313, 328, 444 N.E.2d 549, 564 (1982).