William H. DAVIS & Catherine L. Davis, Appellants,

v.

James L. SHEERIN, Appellee.

No. 01–87–00423–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 30, 1988.

John J. King, Anthony J. Sadberry, Margaret Ann Kickler, Sullivan, King, & Sabom, P.C., Houston, for appellants.

Kent J. Browning, Butler & Binion, Houston, for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

## OPINION

DUNN, Justice.

This is an appeal from portions of a trial court's judgment, in which James L. Shee-rin ("appellee") was declared to own a 45% share in a corporation and in a partnership, which included six pieces of real property found to be partnership assets. The major challenges are against an ordered buy-out of appellee's stock in the corporation and the award to appellee of 45% interest in the six tracts of land found to be partnership assets. William H. Davis ("appellant") is the owner of the remaining 55% interest in both the corporation and the partnership.

In May of 1985, appellee brought suit individually in his own right, and as a shareholder on behalf of W.H. Davis Co., Inc., a Texas corporation ("the corporation"), against William H. Davis and Catherine L. Davis ("appellants") based on allegations of appellants' oppressive conduct toward appellee as a minority shareholder, and their breaches of fiduciary duties owed to appellee and the corporation. Appellee also brought suit against appellant William Davis, to establish his 45% ownership interest in a Texas general partnership known as W.H. Davis & James L. Sheerin ("the partnership"), and certain tracts of land that appellee claimed were partnership assets, and for an alleged breach of the fiduciary duty owed by appellant to appellee in connection with the partnership.

In 1955, William Davis and appellee incorporated a business, initially started by William Davis, in which appellant Davis owned 55% and appellee owned 45% of the corporation's stock. Appellants and appellee all served as directors and officers, with William Davis serving as president and running the day-to-day operations of the business. Appellee, unlike appellants, was not employed by the corporation. In 1960, appellee and appellant William Davis formed a partnership for the purpose of acquiring real estate.

The precipitating cause of appellee's lawsuit in 1985 was appellants' denial of appellee's right to inspect the corporate books, unless appellee produced his stock certificate. Appellants claimed that appellee had made a gift to them, in the late 1960's, of his 45% interest. Just prior to appellee's filing suit on the corporate issue, appellant William Davis also denied that appellee

owned a 45% interest in six tracts of land that appellee claimed were assets of their partnership. Davis claimed that the properties were not partnership assets because the first tract was acquired prior to the formation of the partnership and all of the deeds were in his name. He also claimed that appellee never intended to claim an equity interest in the properties.

Following a six-week trial to a jury, the trial court, in addition to declaring that appellee owned a 45% interest in the corporation, the partnership, and the six tracts of land found to be partnership assets, issued the following orders and award of damages:

(1) an ordered "buy-out" by appellants of appellee's 45% of the stock in the corporation for $550,000, the fair value determined by the jury;

(2) the appointment of a receiver for the corporation;

(3) an injunction against appellants' contributing to a profit sharing plan for their benefit unless a proportionate sum is paid to appellee;

(4) a mandatory injunction for the payment of dividends in the future;

(5) an award of damages in the amount of $20,893 to appellee, individually, for appellants' willful breach of fiduciary duty in receiving informal dividends by making contributions to a profit sharing plan for their benefit to the exclusion of appellee;

(6) an award of $8,500 for costs incurred by appellee in enforcing his rights to inspect the books and $65,000 for paying the court-appointed accounting firm;

(7) an award of $192,600 to appellee, on behalf of the corporation, for recovery of corporate funds used for appellants' attorney's fees;

(8) the imposition of a resulting trust on the six tracts of land;

(9) the dissolution and termination of the partnership and the recovery of $41,422 to appellee for 45% of the partnership assets (other than the land) and $12,078 from the capital account;

(10) An award of $10,583 for actual damages and $500 exemplary damages for breach of fiduciary duty in converting partnership assets other than the land; (11) the reformation of the deeds on the six tracts of land to reflect appellee's 45% undivided interest in fee simple; and (12) the forced sale of the six tracts of land and appointment of a receiver to sell the property and distribute the proceeds according to the parties' respective shares.

On appeal, appellants challenge the following orders of the trial court: (1) the ordered buy-out of appellee's stock in the corporation; (2) the appointment of a receiver; (3) the order to pay dividends in the future; (4) the award to appellee of 45% ownership in the six tracts of land; (5) the imposition of a resulting trust on said property; and (6) the forced sale of said property with 45% of the proceeds to be distributed to appellee. Appellants do not challenge the declaration of ownership interest in the corporation, the mandatory injunction against future contributions to the profit sharing plan to the exclusion of appellee, any of the damages awarded, the order dissolving and terminating the partnership along with the recovery of appellee's 45% interest, nor the reformation of the deeds.

In points of error one through seven, appellants challenge the court's order that they buy-out appellee's 45% interest in the corporation. Appellants' basic argument is two fold: (1) the remedy of a "buy-out" is not available to a minority shareholder under Texas law, and (2) if such a remedy were available, the facts of this case are not appropriate for, nor do the jury's findings support, the application of this remedy based on the court's determination of oppressive conduct.

The Texas Business Corporation Act does not expressly provide for the remedy of a "buy-out" for an aggrieved minority shareholder. Tex.Bus.Corp.Act. art. 7.05 (Vernon 1980) does provide for the appointment of a receiver, with the eventual possibility of liquidation, for aggrieved shareholders who can establish the existence of one of five situations, including illegal, oppressive, or fraudulent conduct by those in control.

Nor do we find any Texas cases where the particular remedy of a "buy-out" has been ordered, unless provided for in a contract between the parties. But courts of other jurisdictions have recognized a "buy-out" as an appropriate remedy, even in the absence of express statutory or contractual authority. *See Alaska Plastics, Inc. v. Coppock,* 621 P.2d 270 (Alaska 1980); *Sauer v. Moffitt,* 363 N.W.2d 269 (Iowa Ct.App.1984); *McCauley v. Tom McCauley & Son, Inc.,* 104 N.M. 523, 724 P.2d 232 (Ct.App.1986) (granting the option of liquidation or "buy-out"); *In re Wiedy's Furniture Clearance Center Co.,* 108 A.D.2d 81, 487 N.Y.S.2d 901 (1985); *Delaney v. Georgia–Pacific Corp.,* 278 Or. 305, 564 P.2d 277 (1977). Alaska, Iowa, New Mexico, New York, and Oregon all have statutes that provide for liquidation as the remedy for oppressive acts, and, in the above cited cases, the courts allowed a "buy-out" as a less harsh remedy. *See* Alaska Stat. § 10.05.540(2) (1985); Iowa Code § 496A.94 (Supp.1988); N.M.Stat.Ann. § 53–16–16 (Supp.1987); N.Y.Bus.Corp.Law § 1104–a (McKinney 1986); Or.Rev.Stat. § 57.595 (1983). Other states' statutes specifically provide for a "buy-out," either as a remedy for an aggrieved minority shareholder, Conn.Gen.Stat.Ann. § 33–384 (West 1987); Ill.Rev.Stat. ch. 32, para. 12.55 (Supp.1988); Minn.Stats.Ann. § 302A.751 (West 1985); N.C.Gen.Stat. § 55–125.1 (1982); S.C.Code Ann. § 33–21–155 (Law.Co-op 1987), or as an option available to a majority shareholder to avoid a liquidation order, Cal.Corp. Code § 2000 (West Supp.1988); W.Va.Code § 31–1–134 (1988).

Both parties rely on *Patton v. Nicholas,* 154 Tex. 385, 279 S.W.2d 848 (1955), to support their respective arguments in favor of or against a court's authority in Texas to order a "buy-out." In that case, the court reversed an order of liquidation in a suit brought by an aggrieved minority shareholder, although it found that liquidation might be an appropriate remedy in some instances. The court made a thorough analysis of earlier decisions in Texas and in other jurisdictions, and held that "Texas courts, under their general equity powers, may in the more extreme cases of the general type of the instant one, decree liquidation and accordingly appoint a receiver." *Id.* 279 S.W.2d at 856–57. The court recognized the absence of such a remedy for a shareholder under either the old statute or the newly enacted Business Corporation Act, article 7.05, which, the court stated, reflected a preference for rehabilitation through the appointment of a receiver, as opposed to liquidation. *Id.,* 279 S.W.2d at 854.

In describing liquidation as the "extreme or ultimate remedy," the court called for the use of lesser remedies, where such remedies were adequate to protect the interests of the aggrieved shareholders, and for "tailoring the remedy to fit the particular case." *Id.,* 279 S.W.2d at 857. Based on its finding of sufficient evidence to support malicious suppression of dividends, but insufficient evidence to support the jury's finding of mismanagement, the court decreed a mandatory injunction for the immediate payment and future payments of reasonable dividends. Even though it reversed the judgment of liquidation, the court ordered that the trial court retain continuing jurisdiction with the right to order liquidation upon violation of the injunction. *Id.*

Appellee relies on *Patton* for its stated policy of "tailoring the remedy to fit the particular case," for its support for analyzing decisions of other jurisdictions in fashioning effective remedies under the court's general equity powers, and because it indicates the supreme court's willingness to use a novel non-statutory remedy where equity requires.

Appellants contend that *"Patton* has long since been cited by commentators as authority for the proposition that Texas follows the general rule across the United States in not allowing a 'buy-out' as a remedy for a minority shareholder." Appellants cite no authority for the alleged general rule against "buy-outs." Further, the only authority citing *Patton* that they point to is 19 Am.Jur.2d *Corporations* sec. 2758 (1986), which cites *Patton* only for the proposition that liquidation is a drastic, harsh, extreme, or ultimate remedy. As

appellee points out, *Patton* has been cited as support for the proposition that most states have adopted the view that a dissolution statutes does not provide the exclusive remedy for injured shareholders, and that courts have equitable powers to fashion appropriate remedies where the majority shareholders have engaged in oppressive conduct. *Masinter v. Webco Co.*, 164 W.Va. 241, 262 S.E.2d 433, 439–440 (1980) (cites omitted).

■ Appellants further argue that appellee's reliance on the New York case of *Wiedy's* is misplaced because the New York statute grants authority to fashion less harsh remedies [1], and that Texas has no statutory authority to do so. However, based on the *Patton* holding that courts could order liquidation under their general equity powers in the absence of statutory authority, we hold that a court could order less harsh remedies under those same equity powers.

"The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it." *Greater Fort Worth v. Mims*, 574 S.W.2d 870, 872 (Tex.Civ.App.—Fort Worth 1978, writ dism'd w.o.j.) (citing *Meis v. Sanitas Service Corp.*, 511 F.2d 655, 658 (5th Cir.1975), in its determination of whether the appointment of a receiver was an abuse of discretion.) "Whenever a situation exists which is contrary to the principles of equity and which can be redressed within the scope of judicial action, a court of equity will devise a remedy to meet the situation though no similar relief has been granted before." *Sauer*, 363 N.W.2d at 274 (citing *Holden v. Construction Mach. Co.*, 202 N.W.2d 348, 363–64 (Iowa 1972)).

We conclude that Texas courts, under their general equity power, may decree a "buy-out" in an appropriate case where less harsh remedies are inadequate to protect the rights of the parties.

Having decided that a "buy-out" is an available remedy under the court's general equity powers, we must decide whether it was appropriate in this case. The trial court's judgment reflects that its "buy-out" order was based on the jury's finding of conspiracy to deprive appellee of his stock, on the evidence and arguments, and on its conclusion that appellants acted oppressively against appellee and would continue to do so.

Appellants contend that, even if this court upholds the "buy-out" as a permissible remedy for an aggrieved minority shareholder, such a remedy would be inappropriate in this case. Their contention is based on the following arguments raised in points of error two through seven: (1) appellee waived any claim of oppression by failing to submit a special issue on oppression; (2) the trial court lacked authority or abused its discretion in making its own finding of oppression; (3) the jury's finding that appellants conspired to deprive appellee of his stock has no effect because of the jury's failure to find that this conspiracy was the proximate cause of any damage; (4) the finding of conspiracy was against the great weight and preponderance of the evidence; and (5) a "buy-out" is not in conformity with the jury's verdict.

■ The first two arguments are based on the assumption that the determination of whether appellants' acts were oppressive is a question of fact for the jury. That assumption is incorrect. Although whether certain acts were performed is a question of fact, the determination of whether these acts constitute oppressive conduct is usually a question of law for the court. *McCauley*, 724 P.2d at 241 (finding sufficient evidence to support the findings and that the findings support the conclusion of oppressive conduct); *Wiedy's*, 487 N.Y.S.2d at 903 (trial court concluded that actions constituted oppressive conduct); *Masinter*, 262 S.W.2d at 441 (finding that certain factual patterns do not constitute the only occurrenc-

---

**1.** New York Bus.Corp.Law sec. 1104–a (McKinney 1986) provides that the court shall take into consideration whether liquidation is the only feasible means and whether it is reasonably necessary for protection of shareholders' rights.

es that may demonstrate oppressive conduct).

■ We therefore hold that appellee did not waive his claim of oppression by not submitting a special issue on it, and that the court had the authority to determine whether the acts of appellants, as found by the jury, were oppressive, as a matter of law.

We next address whether the jury's finding of conspiracy could provide some basis for the court's determination of oppressive conduct. Appellants argue that the jury's finding of conspiracy was rendered immaterial by its finding that the conspiracy was not the proximate cause of any damages. They base this argument on the fact that to recover in a cause of action for conspiracy, there must be a finding of damages resulting from the conspiracy, citing *Massey v. Armco Steel Co.,* 652 S.W.2d 932 (Tex. 1983), and others.

We overrule this argument. The court's judgment did not award damages based on a conspiracy cause of action. Instead, the court considered the various acts found by the jury and made a determination that such acts constituted oppressive conduct.

■ We also hold that appellants' argument that the finding of conspiracy was against the great weight and preponderance of the evidence has been waived. Appellants have not pointed to any evidence in the voluminous record to support their argument, and therefore have waived this complaint. *See Widmer v. Stamps,* 663 S.W.2d 875 (Tex.App.—Houston [14th Dist.] 1983, no writ); Tex.R.App. 74(f).

We next address whether the court's conclusion of oppressive conduct and its ordered "buy-out" is in conformity with the jury's findings.

■ Oppressive conduct is the most common violation for which a "buy-out" was found to be an appropriate remedy in other jurisdictions. *See, e.g., Alaska Plastics,* 621 P.2d 270; *Wiedy's,* 487 N.Y.S.2d 901; *McCauley,* 724 P.2d 232; *Baker v. Commercial Body Builders, Inc.,* 264 Or. 614, 507 P.2d 387 (1973). Courts take an especially broad view of the application of op-

pressive conduct to a closely-held corporation, where oppression may more easily be found. *Skierka v. Skierka Bros. Inc.,* 629 P.2d 214 (Mont.1981). An ordered "buy-out" of stock at its fair value is an especially appropriate remedy in a closely-held corporation, where the oppressive acts of the majority are an attempt to "squeeze out" the minority, who do not have a ready market for the corporation's shares, but are at the mercy of the majority. *See Alaska Plastics,* 621 P.2d at 273–74; *McCauley,* 724 P.2d at 236; O'Neal, F. Hodge, *Oppression of Minority Shareholders* § 9.05 (1975).

The Texas Business Corporation Act, which provides a cause of action based on oppressive conduct, does not define oppressive conduct. *See* art. 7.05. Nor do we find any Texas decision providing a definition. We therefore turn again to decisions of other jurisdictions to consider what constitutes oppressive conduct.

■ Oppressive conduct has been described as an expansive term that is used to cover a multitude of situations dealing with improper conduct, and a narrow definition would be inappropriate. *McCauley,* 724 P.2d at 236. Courts may determine, according to the facts of the particular case, whether the acts complained of serve to frustrate the legitimate expectations of minority shareholders, or whether the acts are of such severity as to warrant the requested relief. *Id.*

The New York court in *Wiedy's* held that oppression should be deemed to arise only when the majority's conduct substantially defeats the expectations that objectively viewed were both reasonable under the circumstances and were central to the minority shareholder's decision to join the venture. *Wiedy's,* 487 N.Y.2d at 903.

Courts in states with statutes containing situations establishing causes of action for minority shareholders, similar to those allowed in the Texas statute, have held that oppressive conduct is an independent ground for relief not requiring a showing of fraud, illegality, mismanagement, wasting of assets, nor deadlock, the other

grounds available for shareholders, though these factors are frequently present. *Fix v. Fix Material Co., Inc.*, 538 S.W.2d 351, 358 (Mo.Ct.App.1976) (citing *Gidwitz v. Lanzit Corrugated Box Co.*, 20 Ill.2d 208, 170 N.E.2d 131, 135[1] (1960)).

While noting that general definitions are of little value for application in a specific case, the Oregon supreme court in *Baker* cited the most quoted definitions of oppressive conduct as:

'burdensome, harsh and wrongful conduct,' 'a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members,' or 'a visible departure from the standards of fair dealing, and an violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely.'

*Baker*, 507 P.2d at 393.

Our review of the record shows that the jury made the following findings in regards to appellants' conduct:

(1) appellants conspired to deprive appellee of his stock ownership in the corporation;

(2) appellants received informal dividends by making profit sharing contributions for their benefit and to the exclusion of appellee, and that this was a willful breach of fiduciary duty;

(3) appellants wasted corporate funds by using them for their legal fees, and that this was a willful breach of fiduciary duty;

(4) appellants did not convert appellee's stock;

(5) appellants were not paid excessive compensation;

(6) there was no malicious suppression of dividends;

(7) various purchases or investments did not constitute a breach of fiduciary duty; and

(8) appellants did not conspire to breach their fiduciary duty.

The jury also found that appellee did not make a gift of his stock to appellants, represent that he would, nor agree to do so in the future. We note that appellants do not challenge any of the jury findings favorable to appellee, except the finding on conspiracy, a challenge that we have already overruled.

Some of the undisputed evidence that the trial court could have also considered in its conclusion of oppressive conduct includes the following:

(1) appellants claimed that appellee had gifted them his stock in the late 1960's, even though the records of the corporation and income tax returns through 1986 clearly show appellee as a 45% stockholder, and appellants and/or their son had made several attempts to purchase appellee's stock in the 1970's and 1980's,;

(2) a letter from the corporation's attorney, dated May 16, 1979, referred to appellant Davis' "wish to avoid declaring dividends and disburse the surplus in the form of bonuses to the officers of the corporation" and the fact that such action may result in an allegation by appellee of "fraudulent intent to deny a shareholder his right to dividends" and "would probably be characterized as a direct effort to deny a shareholder his dividends;" and

(3) appellants approved the minutes of a special meeting of the Board of Director on February 7, 1986, after the filing of this lawsuit, that stated that "Mr. Sheerin's opinions or actions would have no effect on the Board's deliberations."

Even though there were findings of the absence of some of the typical "squeeze out" techniques used in closely held corporations, e.g., no malicious suppression of dividends or excessive salaries, we find that conspiring to deprive one of his ownership of stock in a corporation, especially when the corporate records clearly indicate such ownership, is more oppressive than either of those techniques. Appellant's conduct not only would substantially defeat any reasonable expectations appellee may have had, as required by the New York Court in *Wiedy's*, but would totally extinguish any such expectations. *See Wiedy's*, 487 N.Y.2d at 903.

Appellee's complaints of appellants' conduct go far beyond "dissatisfaction with

corporate management," nor does appellants' conduct fall under the protection of the business judgment rule, two instances found to be inappropriate for causes of action under article 7.05. in a Texas case cited by appellants. *See Texarkana College Bowl, Inc. v. Phillips*, 408 S.W.2d 537, 539 (Tex.Civ.App.—Texarkana 1966, no writ).

We therefore hold that the jury's finding of conspiracy to deprive appellee of his interest in the corporation, together with the acts of willful breach of a fiduciary duty as found by the jury, and the undisputed evidence indicating that appellee would be denied any future voice in the corporation, are ₃ufficient to support the trial court's conclusion of oppressive conduct and the likelihood that it would continue in the future.

Under the analysis set out by the *Patton* court in its determination of whether liquidation was appropriate, we must determine whether lesser remedies than a "buy-out" could adequately protect appellee's interests. In *Patton*, the court found sufficient evidence to support only the malicious suppression of dividends claim, and thus concluded that a mandatory injunction to pay reasonable dividends then and in the future was adequate, with the additional protection of the court retaining jurisdiction.

■ In this case, the award of damages and certain injunctions might be sufficient to remedy the willful breaches of fiduciary duty found by the jury, i.e., informal dividends to appellants by making contributions to the profit sharing plan and waste of corporate funds for legal fees. However, based on appellants' conduct denying appellee any interest or voice in the corporation, we find that these remedies are inadequate to protect appellee's interest and his rights in the corporation.

■ Appellants' oppressive conduct, along with their attempts to purchase appellee's stock, are indications of their desire to gain total control of the corporation. That is exactly what a "buy-out" will achieve. We disagree with appellants' suggestion that a "buy-out" is a more drastic remedy than liquidation. *See Stefano v. Coppock*, 705 P.2d 443, 446 (Alaska 1985). This is especially true in light of the fact that appellants do not challenge the jury's finding of $550,000 as the fair value of appellee's stock, which is the amount set by the trial court for the "buy-out."

Appellants suggest that appellee was required to plead for the statutory remedy of dissolution. However, this was not raised in a separate point of error, nor do they provide any argument or authority for this contention.

Equitable remedies are within the discretion of the trial court and will not be disturbed on appeal unless the record reveals a clear abuse of discretion. *Aubin v. Territorial Mortgage Co. of America*, 640 S.W.2d 737, 742 (Tex.App.—Houston [14th Dist.] 1982, no writ); *see also Citizens Bldg. Inc. v. Azios*, 590 S.W.2d 569, 573 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n.r.e.) (both finding the appointment of a receiver under article 7.05 not to be an abuse of discretion).

Based on the facts of this case, we find that a "buy-out" was an appropriate remedy, and that the trial court did not abuse its discretion.

Points of error one through seven are overruled.

■ In points of error eight through 12, appellants argue that the appointment of a receiver is an abuse of the trial court's discretion, contending that there were neither findings of fact nor evidence to support this "drastic remedy." As previously mentioned, article 7.05 of the Texas Business Corporation Act provides for the appointment of a receiver in an action by an aggrieved shareholder upon establishing the existence of one of five situations, including oppressive conduct by those in control and waste of corporate assets. Article 7.05 reads in part:

A. A receiver may be appointed for the assets and business of a corporation by the district court for the county in which the registered office of the corporation is located, whenever circumstances exist deemed by the court to require the appointment of a receiver to conserve the

assets and business of the corporation and to avoid damage to parties at interest, but only if all other requirements of law are complied with and if all other remedies available either at law or in equity, including the appointment of a receiver for specific assets of the corporation, are determined by the court to be inadequate, and only in the following instances:

The trial court based its order appointing the receiver on the evidence and arguments, and on its conclusion that the appointment of a receiver is necessary to conserve the assets and business of the corporation, and to avoid damage to the parties at interest.

Appellants suggest that the court's order must have been based on the jury's findings of informal dividends to appellants and waste of corporate assets on attorney's fees, both remedied by the recovery of damages, which appellants contend is an adequate remedy at law. They also point out that the jury made no findings of the fraud or oppression alleged in appellee's petition.

We have held that whether appellants' conduct was oppressive was a question of law for the court, and that the jury's findings and evidence were sufficient to support the court's conclusion of oppressive conduct. We also found that the award of damages, referred to by appellants, was not adequate to protect appellee's interest.

While the trial court also ordered a "buy-out" of appellee's stock, it could reasonably have concluded, based on the evidence of appellant's prior misconduct and the "consequent possibility of repetition," that a receiver was necessary to protect the assets of the corporation until the "buy-out" was completed and awarded damages paid. *See Patton,* 279 S.W.2d at 858. We further note that appellants may avoid the necessity of the appointment of the receiver by immediate compliance with the court's "buy-out" order and payment of the damages awarded.

The appointment of a receiver is within the sound discretion of the trial court, and will not be disturbed on appeal unless the record reveals a clear abuse of discretion. *Aubin,* 640 S.W.2d at 742. We find sufficient grounds to support the appointment of a receiver and hold that the trial court did not abuse its discretion.

Points of error eight through 12 are overruled.

In point of error 13, appellants challenge the court's mandatory injunction that appellants pay reasonable dividends annually to appellee in future years from future profits and retained earnings of the corporation, as long as plaintiff remains a shareholder of the corporation.

Appellants argue that the order to pay dividends was an abuse of the trial court's discretion because the jury found no malicious suppression of dividends, a finding that appellants contend is necessary for such injunctive relief, citing *Patton,* 279 S.W.2d 848; *Braswell v. Braswell,* 476 S.W.2d 444 (Tex.Civ.App.—Waco 1972, writ dism'd w.o.j.); *Morrison v. St. Anthony Hotel,* 295 S.W.2d 246 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.). We disagree with appellants' contention that these cases stand for the proposition that an injunction to pay dividends is only proper upon a finding of malicious suppression of dividends. However, we do not find that the facts of this case support such a mandatory injunction.

While the jury did find that appellants received informal dividends to the exclusion of appellee by way of contributions to the profit sharing plan, appellee was afforded two forms of relief for this breach of fiduciary duty, neither of which is challenged by appellants: (1) an award of damages in the amount of $20,893 for losses incurred in the past; and (2) an injunction against appellants' contributing to the profit sharing plan for their benefit unless a proportionate sum is paid to appellee, to prevent any such loss in the future. Appellee has the additional protection of the court-appointed receiver to conserve the assets and business of the corporation and to avoid damages to the parties. Further, there is no evidence that appellee ever requested that dividends be paid, either informally or

formally under the provisions of article 2.38–3 of the Business Corporation Act.

We therefore find that the trial court abused its discretion in ordering the payment of future dividends. Point of error 13 is sustained.

The remaining points of error concern appellee's interest in the partnership with appellant William Davis. Points of error 14 through 21 challenge the court's award to appellee of 45% ownership in the six tracts of land. Points of error 14, 15, and 16 challenge the legal and factual sufficiency of the evidence to support the jury's finding that appellant and appellee formed a partnership at or before the acquisition of the first piece of property was acquired on November 21, 1960.

In determining no evidence points, we are to consider the evidence and inferences that tend to support the findings, and we disregard all evidence and inferences to the contrary. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985). If there is any evidence of probative force to support the finding, the point must be overruled and the finding upheld. *In re King's Estate*, 150 Tex. 662, 664, 244 S.W.2d 660, 661 (1951). In reviewing questions of factual insufficiency, we must consider and weigh all the evidence, both in support of and contrary to the challenged finding. The finding must be upheld unless we find that the evidence is so weak as to be manifestly erroneous or unjust. *Id.* The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon*, 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). We may not substitute our opinion merely because we might have reached a different conclusion. *Benoit v. Wilson*, 150 Tex. 273, 281, 239 S.W.2d 792, 797 (1951).

■ The only basis of appellant's sufficiency of evidence challenge is his contention that appellee admitted that no partnership was formed at or before the acquisition of the first piece of property, which appellant contends was on November 21, 1960. However, the testimony that appellant refers to only indicates appellee's admission that the partnership was formed on December 1, 1960, and that this was after a piece of property was acquired on November 21, 1960, by Cleve Lockett, the partnership's accountant, as trustee for appellee and appellant. The evidence shows that the partnership did not acquire this property from Lockett until August 21, 1961, and that the first piece of property acquired directly by the partnership was on December 15, 1960, two weeks after the formation of the partnership.

We therefore find sufficient evidence to support the jury's finding that the partnership was formed at or before the acquisition of the first piece of property. Points of error 14, 15, and 16 are overruled.

In point of error 17, appellant argues that special issue 47, on whether a partnership was formed on or before the acquisition of the first price of property, was an impermissible comment on the evidence, and was leading and suggestive of appellee's desired answer to special issue 47A.

■ At trial, appellant objected to special issue 47 on the grounds of "no evidence, insufficient evidence, no predicate, comment on the evidence." A party objecting to a charge must point out *distinctly* the objectionable matter and the grounds of the objection. *Mahan Volkswagen, Inc. v. Hall*, 648 S.W.2d 324 (Tex.App.–Houston [1st Dist] 1982, writ ref'd. n.r.e.); Tex.R. Civ.P. 274. When the complaining party's objection is obscured or concealed by voluminous unfounded objections, such objection shall be untenable. Rule 274. Because appellant failed to explain how the special issue constituted a comment on the evidence, but only included this among other stock objections, we find that appellant failed to preserve this objection.

Point of error 17 is overruled.

Points of error 18, 19, and 20 challenge the legal and factual sufficiency of the evidence to support the jury's finding in special issue 47A that all six tracts of land are partnership property. Appellant bases this argument on the fact that there are no deeds nor a written partnership agreement reflecting the partnership's interest in the

property, the deeds all being in the name of appellant. He reasserts his claim that the first tract of land was purchased prior to the formation of the partnership, and further asserts that it was purchased by Lockett as trustee for him.

In regards to the latter assertion, we have already found that the partnership did not acquire this property from Lockett until after the partnership was formed. Furthermore, the deed dated November 21, 1960, referred to by appellant, does not show for whom Lockett was serving as trustee, and Lockett testified that it was his understanding that the property was being acquired for the land venture consisting of appellee and appellant.

■ In regards to appellant's first argument, while there are no deeds nor a written partnership agreement reflecting the partnership's interest in the six tracts, the report of the court-appointed accounting firm of Price Waterhouse supports the jury's finding. The auditor/partner from Price Waterhouse testified that the partnership books reflected the acquisition of the six pieces of property, described by him as the primary activity of the partnership through 1967, and the methods of financing, primarily bank loans. He also testified that the partnership records indicated that appellant and appellee owned the assets of the partnership in a 55/45 split, and that all contributions to the partnership were made according to their respective shares, except the first one that reflected a 50/50 split.

Appellee testified that the reason the deeds were taken in appellant's name was because appellant was the managing partner and, unlike appellee, lived in Houston.

We find legally and factually sufficient evidence to support the jury's findings that all six tracts of land were partnership property. Points of error 18, 19, and 20 are overruled.

In point of error 21, appellant argues that any claim of interest in the six tracts of land is unenforceable because of the statute of frauds and the statute of conveyances. Appellant relies on *Pappas v. Gounaris*, 158 Tex. 355, 311 S.W.2d 644 (1958), where the supreme court, finding that a certain piece of property did not belong to the partnership, held that a written instrument satisfying the statute of frauds is required before property individually owned by a prospective partner prior to the formation of a partnership may become a partnership asset. However, the facts in *Pappas* are distinguishable in that there was only one piece of property at issue, a property individually owned by one of the partners prior to the formation of the property, and there was no written instrument conveying the property after the formation of the partnership.

In our case, all of the pieces of property were acquired after the formation of the partnership, and even though the deeds are in the appellant's name (but not individually, as appellant alleges), the evidence supports finding that these properties were purchased for the partnership, to which both partners contributed according to their respective shares.

■ Appellant's reliance on *Hooks v. Bridgewater*, 111 Tex. 122, 229 S.W. 1114 (1921), regarding the limited exceptions to the statute of frauds for oral conveyances of land, is also misplaced. Appellee is not relying on an oral conveyance of land, but is contending that the six tracts were all purchased by and for the benefit of the partnership. Furthermore, appellant admits in his brief that the statute of frauds is inapplicable if it is shown that property held in the name of one person is held in trust for another. The trial court must have so concluded when it impressed a resulting trust on the property.

We therefore find that appellee's claim to interest in the six tracts of land is not barred by the statute of frauds. Point of error 21 is overruled.

Having overruled points of error 14 through 21, we hold that the court's judgment awarding appellee 45% ownership in the six tracts of land was not error.

Points of error 22 through 27 challenge the court's imposing a resulting trust in favor of appellee on the six tracts of land. Appellant argues that there were no pleadings, special issues submitted, findings, or

evidence to support the imposition of a resulting trust.

The record shows that, among his other requests, appellee prayed for the imposition of a constructive trust, and "for such other and further relief, at law and in equity, to which plaintiff may show himself justly enriched." A prayer for general relief is sufficient to permit the trial court to decree that a resulting trust be impressed on property held in trust by one person for the benefit of another person. *Wimberly v. Kneeland*, 293 S.W.2d 526, 539 (Tex.Civ. App.—Galveston 1956, writ ref'd n.r.e). Furthermore, while a resulting trust and a constructive trust are distinguishable, the courts recognize the existence of confusion between these two trusts, which achieve the same result. *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985 (1948) (citing 54 Am.Jur. 147, sec. 188). Both trusts are classified as "trusts by operation of law" or "implied trusts" imposed to prevent unjust enrichment. *Id.*

We have already found sufficient evidence to support the jury's finding that a partnership was formed at or before the acquisition of the first piece of property, whereby appellee would have a 45% interest in the partnership assets, and that the six tracts of land were property of the partnership. The jury also found that appellant willfully breached a fiduciary duty by refusing to recognize appellee's interest in partnership assets, and that appellant was not entitled to reimbursement for funds spent in excess of his 55% share, neither of which findings appellant challenges.

The latter finding implies that appellant did not pay more than 55% of any money contributed for the acquisition of any of the six tracts, an implication which is supported by the testimony of Lockett and the Price Waterhouse auditor that all contributions were made according to the parties representative shares.

We need not determine whether the evidence is sufficient to support the imposition of a resulting trust, which is implied in law when someone, other than a person in whose name title is taken, pays the purchase price at the time of the transaction. *Nolana Dev. Ass'n v. Corsi*, 682 S.W.2d 246, 250 (Tex.1984); *see also Bybee v. Bybee*, 644 S.W.2d 218, 221 (Tex.App.— Fort Worth 1982, no writ) (partial equitable title imposed where only a portion of the purchase money is contributed by one not named in a deed.) Even if a resulting trust were improper, the evidence and findings clearly support the imposition of a constructive trust, which was requested by appellee and, as previously mentioned, is often confused with a resulting trust. A constructive trust however, unlike a resulting trust, is implied irrespective of, and even contrary to, any implied intention of the parties, *Mills*, 210 S.W.2d at 987, and can be imposed upon the violation of fiducary duty and to adjust the rights of partners. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401 (1960).

We further note that appellant does not challenge the court's order that the deeds be reformed to show appellee as owner of record of an undivided 45% interest in fee simple, and that if appellant fails to do so within 10 days, the court's judgment shall have the effect and operation at law and in equity of such a reformation. Therefore, even if the findings and evidence were found insufficient to support the imposition of an implied trust, the reformation of the deeds, based on the court's declaration that the properties were assets of the partnership in which appellee owned a 45% interest, would still grant appellee equitable, as well as legal, title in the properties.

Points of error 22 through 27 are overruled.

In points of error 28 through 33, appellant challenges the court's order that the property be sold and the proceeds distributed, based on its own finding of the non-susceptibility of the property to partition, and the appointment of a receiver to sell the property.

Appellant argues that before a forced sale of property can be ordered, it must be established that the property is not susceptible to partition in kind, and that this determination is a question of fact for the

jury. He points out that no such special issue was requested or submitted to the jury, and argues that nothing in the jury's findings support such a determination, and that, therefore, the trial court lacked authority or abused its discretion in ordering the sale.

■ The law favors a partition in kind, when such can be made fairly and equitably, rather than a forced sale with the division of the proceeds. *Rayson v. Johns*, 524 S.W.2d 380, 382 (Tex.Civ.App.—Texarkana 1975, writ ref'd n.r.e.). Before a sale will be ordered, the party seeking the sale must prove by a preponderance of the evidence that the property is not susceptible to a fair and equitable partition in kind. *Adams v. Adams*, 205 S.W.2d 801, 803 (Tex.Civ.App.—Waco 1947, no writ). When evidence on the issue of susceptibility is conflicting or admits of more than one inference, its determination is for the jury or trier of fact, based on a preponderance of the evidence. *Rayson*, 524 S.W.2d at 382 (and cases cited therein); *see also White v. Smyth*, 147 Tex 272, 214 S.W.2d 967 (1948) (finding that evidence was sufficient to raise issues of fact and to support jury's finding regarding susceptibility to partition).

Appellant argues that there is no evidence regarding the non-susceptibility of the property to partition. He further argues that appellee's own pleadings and proof and the special issues all refer to distinct and separate tracts of land and, thus, support the property's susceptibility to partition. We further note that in his petition, appellee never alleged that the property was not susceptible to partition, and, in his formal prayer, he requested that the court "enter a decree determining that such property is susceptible to partition and directing partition in accordance with the respective shares of the parties."

■ The only evidence appellee points to for support of the non-susceptibility of the property is the alleged inference that the court could have drawn from the testimony of the expert appraisal witness concerning the effect on the property's value of the parties' lack of ownership of the entire block.[2] We find this evidence to be legally insufficient for the court to conclude, as a matter of law, that the property was not susceptible to partition in kind.

Because appellee failed to submit a special issue regarding the non-susceptibility of the property to partition, we hold that, in the absence of evidence to establish it as a matter of law, the court's order of a forced sale and of the appointment of the receiver to sell the property, rather than partition in kind, was error.

Points of error 27 through 33 are sustained.

The portion of the trial court's judgment ordering a mandatory injunction to pay dividends in the future is reversed and rendered. The portion of the judgment ordering a forced sale of the partnership property is reversed and remanded for procedures necessary for the partition in kind of the property. In all other matters, the judgment is affirmed.

EVANS, C.J., concurs and dissents.

**EVANS, Chief Justice, concurring and dissenting.**

I concur with the majority's holding except to the extent the majority concludes that the trial court abused its discretion in requiring that the appellants pay reasonable dividends annually to appellee in future years from retained profits and retained earnings of the corporation, as long as the appellee remains a shareholder in the corporation.

In my opinion, the jury's findings support the trial court's conclusion that unless ordered to do so, appellants would never pay any dividends to the appellee in the future. Therefore, it is my view that the court did not abuse its discretion in directing that the appellants pay reasonable dividends to the appellee pending the effectua-

---

**2.** All six tracts are within one city block, and Catherine Davis, individually, owns a seventh adjoining tract.

tion of the ordered buy-out. Although, as the majority points out, the appellee did have the protection of other injunctive orders and the receivership, that protection does not, in my opinion, preclude the trial court's determination that a specific injunctive order was needed to provide adequate protection.