Reversed and Rendered in Part, Affirmed in Part, and Opinion filed July
18, 2002














Reversed and Rendered in Part, Affirmed in Part, and Opinion filed July 18, 2002.

 

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-01-00433-CV

____________

 

STEVEN ALLCHIN, Appellant and Cross-Appellee

 

V.

 

CHEMIC, INC., and WALTER WADIAK, Appellees
and Cross-Appellants

 

 

 

On Appeal from
the 113th District Court

Harris County, Texas

Trial Court
Cause No. 99-15445

 

 

 

O P I N I O
N

            This case arises from the claims of
a corporation, Chemic, Inc. (appellee and cross-appellant),
and the corporation’s only two shareholders, Walter Wadiak
(appellee and cross-appellant) and Steven Allchin (appellant and cross-appellee).  Chemic and Wadiak
sued Allchin for breach of contract, breach of
fiduciary duty, conversion, and fraud. 
They also sought a declaratory judgment, the appointment of a certified
public accountant, and attorney’s fees.  Allchin counter-claimed against Wadiak
for shareholder oppression and breach of fiduciary duty and against both Chemic
and Wadiak for breach of contract.  Allchin 








requested a declaratory judgment, a buy-out
of his shares in Chemic, actual and exemplary damages, and attorney’s fees.

            The case was tried to a jury.  At the close of evidence, the trial court
granted Wadiak’s motion for directed verdict on Allchin’s shareholder oppression claim.  The jury found in favor of Allchin on his claims for breach of contract and breach of
fiduciary duty against Wadiak, but did not award any
damages on these claims.  The jury did
award Allchin $51,000 on his breach of contract
(failure to compensate) claim against Chemic. 
Following motions from both sides, the trial court rendered a judgment
on the verdict in part, notwithstanding the verdict (JNOV) in part, and
rendered a declaratory judgment setting forth the terms for Chemic to buy Allchin’s stock.  All
parties appeal.  We reverse and render in
part and affirm in part.

FACTUAL AND
PROCEDURAL BACKGROUND

            In 1983, Wadiak
founded Chemic, a water treatment service company.  Wadiak was
initially the sole shareholder, and has been president of the company since its
beginning.

            Sometime in 1996, Wadiak and Allchin, then Wadiak’s next-door neighbor, discussed the possibility of Allchin’s joining the company.  At the time Allchin
was working for Kodak and was facing a change in employment when Kodak divested
itself of the division for which Allchin worked.

            Wadiak and
Allchin’s discussions culminated in the execution of
two contracts on June 27,
 1996: a Stock Sales Contract by Wadiak
and Allchin and a Buy-Sell Agreement by Chemic, Wadiak, and Allchin.  Following execution of the contracts, Allchin became executive vice president, chairman of the
board of directors, and secretary of Chemic. Wadiak
remained as president, board member, and treasurer.

            Under the Stock Sales Contract, Wadiak agreed to “train [Allchin]
in all facets of [Chemic’s business], including, but
not limited to, industry technology, chemical product assembly, research,
corporation management, sales preparation and service techniques.”  Allchin agreed to
train “sales personnel in effective selling technique(s), account strategy,
pricing, raw material purchasing and negotiations, and
office equipment technology.”  Each party
agreed “to use his talent and best efforts at maximizing the success of
[Chemic] and [to] be actively involved and materially participate and
contribute to the management and operation of [Chemic’s]
business.”  Under the Stock Sales
Contract, “[a]ll major corporate decisions,”
including Chemic’s purchase of stock, had to have the
“unanimous affirmative vote of all shareholders and the approval of the Board
of Directors.”  The Stock Sales Contract
also provided:

            The value of Chemic,
Inc. is $135,000.  The assets of Chemic,
Inc. include all accounts receivable, cash, inventory, equipment, trade
secrets, now-existing and after-acquired customer accounts, and good will. [Wadiak] warrants to [Allchin]
that he has good and legal title to all assets of Chemic, Inc. and the same are
free of liens.  Specifically excluded
from the assets of Chemic, Inc. are the 1996 Mark VIII automobile and payment
from S.W.C., Inc., which remain assets of [Wadiak]
and shall be construed as a loan only to Chemic, Inc.

            The purchase price of
$67,500 shall be paid by [Allchin] to [Wadiak] as follows:

            (a)       A THIRTY-SEVEN THOUSAND AND NO/100
DOLLARS ($37,000.00) cash payment shall be made by [Allchin]
to [Wadiak] on or before August
 1, 1996:

 

                        (I)        [Wadiak] shall
simultaneously tender a stock certificate evidencing the outright purchase and
ownership of TWO HUNDRED SEVENTY-SEVEN (277) shares of common stock of Chemic,
Inc. to [Allchin] at that time.

 

            (b)       The remaining THIRTY THOUSAND FIVE
HUNDRED AND NO/100 DOLLARS ($30,500.00) shall be payable by [Allchin] to [Wadiak] at a rate of
Twenty Percent (20%) of [Allchin]’s net income he
receives in the form of commissions and/or salary from Chemic, Inc.  Further, the parties agree that [Allchin] will not be responsible to [Wadiak]
for any balance due should the Corporation cease operations for any reason,
including, but not limited to dissolution, insolvency or Chapter 7 bankruptcy
proceedings, but rather this obligation to [Wadiak]
shall be deemed fulfilled in its entirety;

 

                        (ii)       [Wadiak] shall
at the time of closing present to [Allchin] for his
inspection a second stock certificate evidencing [Allchin]’s
ownership of the remaining TWO HUNDRED TWENTY-THREE (223) shares of common
stock which shall remain in the possession of [Wadiak]
until such time as the purchase price for the remaining shares is fully and
finally paid by [Allchin] to [Wadiak].  Should [Allchin]
default on the $37,500 payment the parties agree that [Allchin]
will endorse the second stock certificate to [Wadiak]
in the proportion to the remaining unpaid balance.

 

            As required by the Stock Sales
Contract, Allchin initially paid Wadiak
$37,000 for 277 shares.  By July, 1998, Allchin had made four payments totaling $1884.40, leaving a
balance of $28,615.50 for the remaining 223 shares.   Allchin never paid
the balance.  Allchin
claimed he “paid” for the second stock certificate through compensation for
salary owed to him under an oral agreement to take $3,000 a month and a ten
percent commission.  Wadiak
denied such an agreement, contending the only agreement was that Allchin would take fifty percent of the profits.

            The Buy-Sell Agreement provided for
future disposition of the shares of Chemic stock.  Under this agreement, Chemic had the option
to purchase a shareholder’s stock if the shareholder died, terminated
employment, or effected a stock transfer in another manner.  The agreement further provided a means of
determining the purchase price to be paid if Chemic or its shareholders elected
to purchase the stock.  Specifically, the
purchase price was to be “the market value of the shares determined on the last
day of the month immediately preceding the month of
transfer.”  In addition,

Market Value shall be determined by the parties hereto.  In the event the parties are not able to
agree upon the market value, they shall appoint by agreement among themselves,
or if need be, petition any Harris County District Court judge to appoint a
qualified certified public accountant, having not less than ten (10) years of
active practice, who shall determine such market value.  Such determination shall be made in
accordance with accepted business and accounting principles.

 

            The relationship between Allchin and Wadiak subsequently
deteriorated.  Chemic’s
income tax returns for 1996 and 1998 show a negative taxable income.  The return for 1997 shows taxable income of
approximately $13,000.  Neither Wadiak nor Allchin received any
compensation from Chemic until 1998, when each received a total of $7,000 for
June and July.[1]  According to Wadiak,
in July 1998, Wadiak offered to give Allchin back the money Allchin
had put into the company, but Allchin refused,
wanting $165,000 instead.

            On August 24, 1998, Allchin
gave notice he was terminating his employment at Chemic.  His last official day at work was August 28, 1998.  On August 30, 1998, the day before the valuation date
under the Buy-Sell Agreement, a break-in occurred at Chemic’s
offices and many of Chemic’s records were
stolen.  There was no evidence of forced
entry, and Wadiak and Allchin
blamed each other for the burglary.  Allchin resigned as an officer and director on September 17, 1998. 

            Allchin’s
termination triggered the clause in the Buy-Sell Agreement for disposition of Allchin’s stock.  In
October 1998, Wadiak gave Allchin
notice of Chemic’s intent to purchase the outstanding
shares and explained a CPA had been engaged to determine the market value of
the stock.  In December 1998, Chemic’s counsel again informed Allchin of Chemic’s election to
purchase the shares, referred to correspondence indicating the parties had been
unable to agree on the market value, and suggested one of three named
accountants make a determination of market value if the parties were unable to
agree by January
 15, 1999.  Counsel also
informed Allchin that, if the parties could not agree
on market value or an accountant by January 15, Chemic and Wadiak
would petition a Harris County court to
“make such a determination.”

            Allchin
responded through counsel.  Among other
matters, Allchin contended Chemic’s
election to purchase the stock required the unanimous consent of all
shareholders.  Allchin
contended he “effectively” owned 500 shares, or fifty percent of the stock
because of payment of a percentage of commissions or salary he received or should have received. 
Counsel also stated:

            Because our clients
find themselves in a deadlocked situation in that Mr. Wadiak
does not have the votes to disregard the will and opinions of Mr. Allchin with respect to corporate matters requiring a
majority or unanimous affirmative vote of the shareholders, my client is
willing to entertain a reasonable cash buyout of his shares at fair market
value by either Chemic Inc. or Mr. Wadiak . . . .

 

Allchin did not provide the name of a CPA
to determine fair market value.

            The instant suit followed.  At trial, Wadiak
and Allchin blamed each other for Chemic’s
performance.  Each accused the other of
violating the clause in the Stock Sales Contract requiring each party to use
his talent and best efforts to maximize Chemic’s
success.  Allchin
complained Wadiak did not train him in all facets of
the business and did not participate or contribute full time to the management
and operations of Chemic.  Allchin believed Wadiak’s
drinking had an adverse effect on Wadiak’s ability to
function at work.  Allchin
also complained Wadiak failed to obtain Allchin’s approval in hiring an employee who had no water
treatment experience.  Finally, Allchin complained Wadiak,
without Allchin’s approval, moved the corporate
accounts to a different bank after the break-in.

            Wadiak
complained of  Allchin’s continued employment with Kodak for six
months after signing the agreements, when Wadiak had
expected him to start immediately.  Wadiak also introduced evidence Allchin
made negative comments about Wadiak and Chemic to
customers and employees.  According to Wadiak, Allchin had no customers
that he sold by himself.

            Three witnesses provided an opinion
about Chemic’s value. 
In October 1999, Scott Mitchell, the court-appointed CPA, prepared a
preliminary report, indicating a “valuation” of $79,134 as of December 31, 1998.  He indicated several types of information
that might have an impact on his estimate. 
Nevertheless, his determination remained the same at trial.

            Robert Hancock, a CPA called by
Chemic, criticized Mitchell’s report as being “wishy-washy.”  Based on the income approach (the ability of
Chemic to earn money) and the market approach (comparable companies as
indicative of value), Hancock estimated Chemic had
“negligible value.”  Based on an asset
approach (the highest and best use), Hancock considered Chemic to be “of some
value, but somewhat negligible.”  In his
preliminary report, Hancock estimated Chemic’s value
as “less than $6,000 on a liquidation basis based on the book value of $11,315
on August 31, 1998.”

            Testifying for Allchin,
Paul Puckorius, a water management consultant, valued
Chemic at $600,000, a value he considered “conservative.”  He arrived at this value by applying a
multiplier of two to Chemic’s 1998 gross sales of
$317,000, rounded to $300,000.  An
industry article Puckorius considered in preparing
his report, however, referred to a price-to-annual-volume ratio of 1.0 to
1.33.  Jack Morris, a water treatment
consultant called by Chemic, testified he had sold his stock in a water
treatment company based on a value of one times annual sale price.  The company in Morris’s case was profitable
and was able to pay its partners substantial salaries.

            At the close of evidence, the trial
court granted Chemic and Wadiak’s motion for a
directed verdict against Allchin on shareholder
oppression.  The case was submitted to
the jury on breach of contract and breach of fiduciary duty.  The jury returned an eleven to one verdict,  finding the
following regarding Allchin’s alleged conduct:

$          Allchin did not fail to comply with the Stock Sales
Contract (question 1a);

$          Allchin did not fail to comply with his fiduciary duty to
Chemic (question 4);

$          Allchin did not convert assets of Chemic (question 10);

$          Allchin did not commit fraud against Wadiak
or Chemic (question 12);

$          Allchin was not estopped from
complaining of the terms of the Buy-Sell Agreement (question 22).




 








            Regarding Wadiak’s alleged
conduct, the jury found:

 

$          Wadiak failed to comply with the Stock Sales Contract
(question 1b);

$          Wadiak failed to comply with his fiduciary duty to Allchin (question 7);

$          Wadiak’s conduct was done with malice (question 9);

$          Allchin was entitled to zero damages as a result of Wadiak’s breach of the sales contract and breach of
fiduciary duty (questions 3 and 8).

 

            Regarding Chemic, the jury found:

$          Chemic
failed to comply with an agreement to compensate Allchin
(question 15);

$          Allchin did not waive his rights to compensation from
Chemic (question 16);

$          Allchin was entitled to compensation in the amount of
$51,000 (question 17).

 

            Finally, the jury found:

$          Allchin owned 500 shares of Chemic as of August 31, 1998 (question 23);

$          The
market value of the total shares of stock of Chemic as of August 31, 1998, was $300,000 (question 24);

$          Allchin was entitled to reasonable attorney’s fees of
$65,000 for preparation and trial, $15,000 for an appeal to the Court of
Appeals, and $10,000 for an appeal to the Supreme Court of Texas (question 21).

 

            Following post-verdict motions from
both sides, the trial court rendered a judgment on the verdict in part, not on
the verdict (JNOV) in part, and ordered in part:

$          Wadiak is entitled to a declaration under the Stock Sales
Contract that Allchin is the owner of 291 shares of
Chemic;

$          Chemic
and Wadiak are entitled to a declaration under the
Buy-Sell Agreement that Chemic has the option to purchase and elected to
purchase Allchin’s shares of Chemic;

$          The
valuation of the total shares of Chemic as of December
 31, 1998, is $79,134;

$          Allchin shall endorse and sell to Chemic, and Chemic shall
purchase from Allchin, 291 shares for $23,027;

$          Allchin is estopped from complaining
of the terms of the Buy-Sell Agreement;

$          Chemic
is entitled to actual damages of $12,000 against Allchin
for conversion;

$          Chemic
is entitled to reasonable and necessary attorney’s fees of $45,000 (for
preparation and trial), $10,000 (if appealed to the Court of Appeals), and
$5,000 (if appealed to the Supreme Court of Texas);

$          Allchin is entitled to actual damages of $12,000 against
Chemic for his claim of compensation against Chemic;

$          Allchin is entitled to reasonable and necessary attorney’s
fees of $25,000 (for preparation and trial), $15,000 (if appealed to the Court
of Appeals), and $10,000 (if appealed to the Supreme Court of Texas).

 

            Allchin
perfected this appeal.  Chemic and Wadiak cross-appealed.

DISCUSSION

            1.         Did
the trial court err in directing judgment against Allchin
on his shareholder oppression claim?  

 

            In his first issue, Allchin challenges the trial court’s disposition of Chemic
and Wadiak’s motion for a directed verdict on his
shareholder oppression claim.  He argues
(1) whether acts constitute shareholder oppression is a question of law, and
the motion was technically one for judgment; (2) Texas recognizes
the equitable claim of shareholder oppression; (3) the facts of this case
establish shareholder oppression by Wadiak; and (4)
the appropriate remedy is a buy-out. 
Chemic and Wadiak respond (1) Allchin has not challenged the portion of judgment granting
specific performance and declaratory relief, and those portions provide
independent grounds for affirmance; (2) Allchin waived his right to claim shareholder oppression by
not submitting appropriate jury questions; and (3) there is no evidence of
shareholder oppression and Allchin has not
established the existence of shareholder oppression as a matter of law.

 class=Section4>

Purported Lack of Challenge to Portion of Judgment Granting Specific
Performance and Declaratory Relief

 

            Allchin’s
first issue is directed at the trial court’s not granting the equitable relief
of a buy-out of his Chemic shares in the number and at
the value found by the jury.  This remedy
is inconsistent with the remedy fashioned by the court in its declaratory
judgment and order for specific performance. 
Allchin’s argument under his first issue
necessarily incorporates a general challenge to the declaratory judgment and
order for specific performance.  “The
statement of an issue or point will be treated as covering every subsidiary
question that is fairly included.”  Tex. R. App. P. 38.1(e).

Shareholder Oppression as an Issue of Law with Supporting Questions
Submitted to Jury

 

            In Davis v. Sheerin, the First Court of
Appeals rejected the assumption that the determination of whether a party’s
acts were oppressive was a question of fact for the jury.  754 S.W.2d 375, 380 (Tex.
App.—Houston [1st Dist.] 1988, writ denied).  Instead, the Davis court
reasoned:

Although whether certain acts were performed is a question of fact, the
determination of whether these acts constitute oppressive conduct is usually a
question of law for the court.  McCauley [v. Tom McCauley & Son, Inc., 724 P.2d 232, 241(N.M. Ct. App.
1986)] (finding sufficient evidence to support the findings and that the
findings support the conclusion of oppressive conduct); [In re Wiedy’s Furniture Clearance Center Co.,
487 N.Y.S.2d 901, 903 (1985)] (trial court concluded that actions constituted
oppressive conduct); Masinter
[v. Webco Co.,
262 S.E.2d 433, 441 (1980)] (finding that certain factual patterns do not
constitute the only occurrences that may demonstrate oppressive conduct).

            We therefore hold that
appellee did not waive his claim of oppression by not
submitting a special issue on it, and that the court had the authority to
determine whether the acts of appellants, as found by the jury, were
oppressive, as a matter of law.

Id. at 380–81.

            Under the reasoning in Davis, Allchin did not waive his claim of shareholder oppression
by not submitting that question to the jury. 
We therefore address Allchin’s issue on the
merits.

Shareholder Oppression Claims in Texas and the Facts of the Present Case

            Shareholder oppression is generally not
available to a fifty percent owner.  In Hoggett v. Brown,
this court noted, in certain limited circumstances, a majority shareholder who
dominates control over a business may owe a fiduciary duty to the minority
shareholder.  971 S.W.2d 472, 488 n.13 (Tex. App.—Houston [14th Dist.] 1997, pet. denied).  The Hoggett court listed the following examples:   Patton
v. Nicholas, 154 Tex. 385, 279
S.W.2d 848 (1955) (concerning injunction issued against majority shareholder
who maliciously suppressed dividends); Davis, 754
S.W.2d 375 (concerning court-ordered buy-out of minority shareholder when
majority shareholder engaged in oppressive conduct); Duncan v. Lichtenberger, 671 S.W.2d 948 (Tex. App.—Fort Worth 1984,
writ ref’d n.r.e.)  (holding minority
shareholders entitled to reimbursement of monetary contribution to corporation
when majority shareholder completely excluded minority shareholders from
management of business); Thompson v. Hambrick, 508 S.W.2d 949 (Tex. Civ.
App.—Dallas 1974, writ ref’d n.r.e.)
(observing fact issue existed whether majority
shareholders wrongfully obtained premium for selling control of corporation); Morrison v. St. Anthony Hotel, 295
S.W.2d 246 (Tex. Civ. App.—San Antonio 1956, writ ref’d n.r.e.) (holding
former minority shareholder entitled to sue majority shareholder for malicious
suppression of dividends).  Hoggett, 971
S.W.2d at 488 n.13. 
The Hoggett
court, however, distinguished these cases from the one before it because Brown,
the defendant, was never a controlling shareholder of the corporation.  Id.

            In the present case, Allchin contends he “owns” fifty percent of the stock.  Even if Allchin did
not fully pay for all of the shares reflected by the second stock certificate,
the second stock certificate shows Allchin as owner
of those shares, and Allchin had equal voting rights
with Wadiak under the terms of the Stock Sales
Contract.  Consistent with Hoggett, we
question whether a viable claim of shareholder oppression can exist under these
facts.

            Allchin,
nevertheless, contends the fact he and Wadiak each
owned fifty percent of the shares is not critical.  In support he cites Hollis v. Hill, 232 F.3d 460, 467–68 n.21 (5th Cir. 2000).  In Hollis,
one of the shareholders acknowledged he had control over the corporation.  Id. at 468 n.21.  The only
evidence Allchin provides of a similar acknowledgment
by Wadiak is the following testimony in response to
questions about Chemic’s name recognition:

            Q  [by Allchin’s
counsel] You are known not only in the Gulf area region but in other regions,
correct?

            A  [by Wadiak]
I am.  The company isn’t.  I am – as a company.

 

            We conclude this evidence is not
sufficient to take Allchin’s case out of the rule of Hoggett.

            No facts were proved in this case that would
support a claim of shareholder oppression.  Even were we to conclude the preceding
evidence is sufficient to bring Allchin’s case under
the rule expressed in Hollis, we are
unwilling to say a cause of action exists for shareholder oppression,
particularly under the facts of this case. 
In Willis v. Bydalek,
the First Court of Appeals summarized the definition of “oppressive conduct,”
from Davis:

            1. majority
shareholders’ conduct that substantially defeats the minority’s expectations
that, objectively viewed, were both reasonable under the circumstances and
central to the minority shareholder’s decision to join the venture;  or

            2.  burdensome, harsh, or wrongful conduct; a
lack of probity and fair dealing in the company’s affairs to the prejudice of
some members; or a visible departure from the standards of fair dealing and a
violation of fair play on which each shareholder is entitled to rely.

 

997 S.W.2d 798, 801 (Tex. App.—Houston [1st Dist.] 1999, pet.
denied) (citing Davis, 754 S.W.2d at 381–82). 
In addition, the Willis court
advised caution in concluding conduct is oppressive and described the competing
concerns in such cases:

Courts must exercise caution
in determining what shows oppressive conduct. 
McCauley v. Tom
McCauley & Son, Inc., 104 N.M. 523, 724 P.2d 232, 237 (1986).  The minority shareholder’s reasonable
expectations must be balanced against the corporation's need to exercise its
business judgment and run its business efficiently.  Landstrom v. Shaver, 561 N.W.2d 1,
8 (S.D.1997).  Therefore, despite the
existence of the minority-majority fiduciary duty, a corporation’s officers and
directors are still afforded a rather broad latitude
in conducting corporate affairs.  Masinter v. WEBCO Co., 164 W. Va. 241, 262
S.E.2d 433, 438 (1980).

Willis, 997 S.W.2d at 801.

            To determine whether Allchin has established a claim of shareholder oppression,
we would need to consider whether the jury’s findings — in this case Wadiak’s breach of fiduciary duty with malice, Wadiak’s breach of the Stock Sales Contract, and Chemic’s breach of a contract to compensate Allchin — provide support for such a claim.  See id.;
Davis, 754 S.W.2d at 381.[2]  We also look at the evidentiary support for
those findings.  See Willis, 997 S.W.2d at 801–02; Davis, 754 S.W.2d at 382–83.  The jury’s failure to award damages is not a
factor in this determination.  See Davis, 754 S.W.2d at 381.  We
note, however, the jury findings in the present case are far less specific, and
rest on less damaging claims, than those in either Willis or Davis.  See
Willis, 997 S.W.2d at 801 (finding of
wrongful lockout); Davis, 754 S.W.2d
at 382 (findings of conspiracy to deprive stockholder of stock ownership, of
receipt of informal dividends by making profit sharing contributions for own
benefit and to exclusion of minority stockholders, and of wasting corporate
funds, a willful breach of fiduciary duty).

            We have thoroughly reviewed the
record, the closing arguments, and the briefs in this court.  Allchin’s claim of
oppressive behavior rests on the following allegations regarding Wadiak’s conduct prior to Allchin’s
resignation as an employee: not providing as much training as Allchin expected (although Wadiak
provided training material and opportunities to work in the field); failing to
use his talent and best effort to maximize Chemic’s
success (e.g., drinking and not working a sufficient number of hours); failing
to participate materially and contribute to the operation of the business (“[l]ack of self-control/leadership in the corporation”);
failing to allow Allchin to participate and
contribute to the management of the company (e.g., hiring an employee Allchin did not want to hire); and, using Chemic for
personal gain (no examples provided).  Allchin claims he was forced to resign as a result of Wadiak’s conduct. 
Additionally, Allchin cites the following
conduct by Wadiak after Allchin’s
resignation: failing to seek Allchin’s consent for Chemic’s proposed purchase of Allchin’s
stock and failing, after the break-in, to maintain Chemic’s
accounts in the bank designated in the Stock Sales Contract.[3]

            Although Allchin
represents he was forced to resign as a result of Wadiak’s
conduct, Allchin’s testimony describes a different
scenario.  When asked the reason for his
resignation, Allchin testified,

I had secured another full-time job with the Aquatrack
Instrument Company. . . . .  I had come
to the conclusion that Mr. Wadiak was not going to
honor my final request of working 24 sober hours a week and I just – it was
just enough.  I wanted to move on with my
life and get that out of my life.

 

He
further stated his termination was “voluntary,” and explained, “I felt that I
was in a dead-end scenario.  There was
never going to be a change.”  An employee
who voluntarily leaves the employment of the corporation presents a less
persuasive case for concluding the majority shareholders oppressed him.  See
2 F. H. O’Neal & Robert Thompson,
Close Corporations:  Law and Practice
§ 9.27, at 9-162–63 (3d ed. 2000) (citing Smith-Shrader Co. v. Smith, 483 N.E.2d 283 (Ill. App. Ct.
1985); Lynch v. Buchanan, 377 A.2d
592 (Md. Ct. Spec. App. 1977); Kisner v. Coffey,
418 So. 2d 58 (Miss. 1982)).

            Additionally, the conduct Allchin alleges is distinguishable from cases in which
courts held the facts established stockholder oppression.  Cf.,
e.g., Davis, 754 S.W.2d at 382 (holding conduct oppressive when majority
shareholders conspired to deprive minority shareholder of stock and breached
their fiduciary duty by wrongfully withholding dividends and wasting corporate
funds on personal attorney’s fees); In re
Topper, 433 N.Y.S.2d 359, 361-62 (N.Y. Sup. Ct. 1980) (holding conduct
oppressive when corporation flourished, but majority shareholders never paid
dividends, and majority removed minority shareholder as officer and fired him);
Baker v. Commercial Body Builders, Inc.,
507 P.2d 387, 390–91, 398 (Or. 1973) (holding conduct oppressive when majority
shareholder prevented minority shareholder from reviewing corporate books, took
salary increase while denying one to minority shareholder, removed minority
shareholder as officer and director, and ceased notifying him of
meetings).  Instead, Allchin’s
complaints reflect disagreements about policy, and, as such, do not support a
claim of shareholder oppression warranting a buy-out.  See
Barnett v. International Tennis Corp., 263 N.W.2d 908, 917 (Mich. 1978)
(upholding denial  of dissolution and
buy-out when there was dissension among shareholders and financial loss in
connection with acquisition of franchise, but no corporate paralysis, deadlock,
mismanagement, deterioration of corporate property, nor accounting
inaccuracies).

            The trial court properly directed
judgment against Allchin on his claim for shareholder
oppression.  We overrule issue one.




            2.         Did
the trial court err in rendering judgment notwithstanding the verdict?

Summary of the Parties’ Arguments

            In issue two, Allchin
challenges the trial court’s JNOV, and its purported findings that (1) Wadiak did not fail to comply with the Stock Sales
Contract; (2) Wadiak did not fail to comply with his
fiduciary duty to Allchin and did not act with
malice; (3) Allchin converted $12,000 of Chemic’s assets; (4) Allchin’s
damage from Chemic’s failure to comply with its
agreement to compensate was $12,000 (reduced from a jury finding of $51,000);
(5) Wadiak and Chemic were entitled to attorney’s
fees; (6) Allchin is estopped
from denying the terms of the Buy-Sell Agreement; (7) Allchin
owned 291 shares of Chemic stock as of August 31, 1998 (reduced from a jury
finding of 500); and (8) the market value of Chemic as of August 31, 1998 was
$79,134 (reduced from a jury finding of $300,000).  Chemic and Wadiak
contend the JNOV was proper except for the award of $12,000 for the breach of
agreement to compensate, which they challenge by cross-appeal.  In cross-points, Chemic challenges the
factual sufficiency of the evidence to support the jury’s findings (1) Allchin did not convert Chemic’s
assets and (2) Allchin suffered $51,000 damages from Chemic’s failure to compensate Allchin.

Standards for Granting a JNOV and
Standards of Review

            A JNOV is proper when a directed
verdict would have been proper.  Tex. R. Civ.
P. 301; Fort
Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d
392, 394 (Tex. 1991).  A plaintiff is
entitled to a directed verdict if he has conclusively proved the elements of
his cause of action, that is, when reasonable minds can draw only one
conclusion from the evidence.  In re Estate of Crawford, 795 S.W.2d
835, 838 (Tex. App.—Amarillo 1990, no writ) (citing Collora v. Navarro, 574 S.W.2d 65, 68 (Tex. 1978)).  A directed verdict for a defendant is
appropriate when the plaintiff fails to present evidence raising a fact issue
essential to the plaintiff’s right of recovery or when the evidence
conclusively establishes a defense to the plaintiff’s cause of action. 
Prudential Ins. Co. of America v. Fin. Review Servs., Inc., 29 S.W.3d
74, 77 (Tex. 2000).

            A trial court may disregard a jury’s
findings and grant a motion for judgment notwithstanding the verdict when there
is no evidence upon which the jury could have made its findings. See Mancorp,
Inc. v. Culpepper, 802 S.W.2d 226, 227 (Tex. 1990).  “No evidence”
exists, and the trial court should render a JNOV, when the record discloses one
of the following: (1) a complete absence of evidence of a vital fact; (2) the
trial court is barred by rules of law or evidence from giving weight to the
only evidence offered to prove a vital fact; (3) the evidence offered to prove
a vital fact is no more than a scintilla of evidence; or (4) the evidence
establishes conclusively the opposite of a vital fact.  See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793
S.W.2d 660, 666 n.9 (Tex. 1990).  To determine
whether there is any evidence, we review the record in the light most favorable
to the verdict, considering only the evidence and inferences that support the
verdict and rejecting the evidence and inferences contrary to the verdict.  Mancorp, 802 S.W.2d at 227.  When there is more than a scintilla of
competent evidence to support the jury’s findings, an appellate court will
reverse the JNOV.  See id. at 228.  More than a scintilla of evidence exists when
the evidence supporting the finding rises to a level that would enable
reasonable minds to differ in their conclusions.   See
Nat’l Convenience Stores, Inc. v. Matherne, 987 S.W.2d 145, 148 (Tex. App.—Houston [14th Dist.] 1999, no
pet.) (stating rule in context of reviewing denial of
JNOV).  

            When an appellate court determines
the trial court erroneously rendered a JNOV, the appellate court must reverse
the judgment of the trial court and enter judgment in harmony with the verdict,
unless the appellee presents a cross-point sufficient
to vitiate the jury’s verdict.   See Tex.
R. Civ. P. 324(c); Burns v. Resolution Trust
Corp., 880 S.W.2d 149, 151 (Tex. App.—Houston [14th Dist.] 1994, no writ).  As summarized above, Chemic and Wadiak present such cross-points and argue the evidence was
factually insufficient to support the jury’s findings on the questions of Allchin’s conversion and Chemic’s
breach of the agreement to compensate.

            In conducting a factual sufficiency
review, we examine all of the evidence in the record, both supporting and
contrary to the verdict.  Plas-Tex, Inc. v. U.S. Steel
Corp., 772 S.W.2d 442, 445 (Tex. 1989).  After
considering and weighing all the evidence, we will sustain the challenge only
if the finding is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust.  Cain v. Bain, 709 S.W.2d
175, 176 (Tex. 1986). 

Allchin’s Challenges to the JNOV

            Wadiak’s violation of the Stock Sales
Contract.  Allchin first challenges the JNOV as setting aside the
finding Wadiak violated the Stock Sales Contract
(question 1a).  The trial court, however,
set aside only that part of question 1 in which the jury found Allchin had not failed to comply with the Stock Sales
Contract (question 1b).[4]  The trial court did not disturb the finding
regarding Wadiak’s breach.  Allchin’s argument
is without basis in the record.

            We overrule Allchin’s
issue two to the extent it addresses Wadiak’s breach
of the Stock Sales Contract.

            Wadiak’s breach of fiduciary duty.  Allchin next
challenges that part of the JNOV that set aside the findings Wadiak breached, with malice, his fiduciary duty to Allchin.  The jury,
however, found no damages for the breach, and Allchin
does not challenge that finding on appeal. 
When the jury finds no damages, findings on issues of liability are
immaterial.  See Hancock v. City of San
Antonio, 800 S.W.2d 881, 885 (Tex. App.—San
Antonio 1990, writ denied) (stating rule in context of determining erroneous
submission of liability issue was harmless).

            A trial court may disregard a jury
finding and enter judgment when other jury findings render the finding at issue
immaterial.   McDaniel v.
Continental Apartments Joint Venture, 887
S.W.2d 167, 170–71 (Tex. App.—Dallas 1994, writ denied).  When a trial court disregards an immaterial
jury response, we do not consider it as a judgment notwithstanding the
verdict.  Brown v. Armstrong, 713 S.W.2d 725, 728
(Tex. App.—Houston [14th Dist.] 1986, writ ref’d n.r.e.).

            Given the unchallenged finding of
zero damages, the jury’s finding of a breach of fiduciary duty by Wadiak is material only to the claim of shareholder
oppression.  We have addressed that claim
above and held it to be without merit.

            We overrule Allchin’s
issue two to the extent it addresses the Wadiak’s
breach of the Stock Sales Contract and breach of fiduciary duty.

            Allchin’s conversion of Chemic’s assets.  Allchin challenges
that portion of the JNOV (1) setting aside the jury’s finding Allchin did not convert Chemic’s
assets and (2) rendering JNOV in favor of Chemic for $12,000.  Chemic argues the evidence conclusively
establishes Allchin converted its assets and,
alternatively in a cross-point, attacks the factual sufficiency of the evidence
to support the jury’s finding.  We
therefore review both the legal and factual sufficiency of the evidence
supporting the jury’s finding.

            Conversion is the wrongful exercise
of dominion and control over another’s property in denial of, or inconsistent
with, the owner’s right.  Specialty Retailers, Inc. v.
Fuqua, 29 S.W.3d 140, 148 (Tex. App.—Houston [14th Dist.] 2000, pet. denied).  A claim for conversion requires the plaintiff
to show (1) title, (2) right to possession, and (3) a demand for return of the
property unless the possessor’s acts manifest a clear repudiation of the
plaintiff’s rights.  Schwartz v. Pinnacle Communications, 944 S.W.2d 427, 432 (Tex. App.— Houston [14th Dist.] 1997, no writ).

            Chemic’s
conversion claim turns on Allchin’s alleged
disposition of half of a $24,000 settlement Chemic received for a theft of Chemic property.[5]  Chemic’s theory was
Allchin transferred his half of the insurance
proceeds into his checking account and did not use the proceeds to purchase
property for Chemic.  Chemic relies on
the following testimony:

            Q   [by Chemic’s counsel] And what was
done with that [$24,000 settlement] check?

            A   [by Wadiak] The check was divided
between Mr. Allchin and myself.  And we were supposed to purchase stuff for Chemic
Incorporated.  I bought the balance of
some other things.  Jack Morris &
Associates, Jack Morris as part of his settlement from Cite Corporation, which
we have the receipts for, Mr. Allchin transferred it
into his bank account, took computer stuff that was purchased, but it wound up
in his expense reports.

 

            Allchin
testified he did not take any property from Chemic that did not belong to
him.  Chemic points to no evidence it
ever demanded Allchin return the insurance proceeds,
and the evidence of Allchin’s acts does not manifest
a clear repudiation of Chemic’s rights.  The evidence did not conclusively establish Allchin converted Chemic’s
assets.  The trial court erred in
rendering the JNOV in favor of Chemic on its conversion claim.

            The jury’s finding is also not so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust.  In addition
to the testimony quoted above, Chemic points to the following:

            Q 
[by Chemic’s counsel] What happened
with respect to that $24,000?

            A 
[by Wadiak] I took $12,085 and Steve Allchin took $12,085. 
And it was to be spent on replacing stuff from the break-in.

            Q  Are you aware of
any documents . . . . any items which Mr. Allchin expensed [sic] without placing on his expense
report for the company associated with that $12,000?

            A  No, I’m not.

 

            We do not see how this evidence
advances Chemic’s claim.  We sustain Allchin’s
issue two to the extent it addresses the conversion claim.  We overrule Chemic’s
cross-point.

            Chemic’s
failure to compensate Allchin and the resulting
damages.  The jury found  Chemic failed
to compensate Allchin and found resulting damages in
the amount of $51,000.  The trial court
left the finding of failure to compensate intact, but set aside the damages
finding, and rendered JNOV for damages in the amount of $12,000.  When a party who did not have the burden of
proof at trial requests a judgment notwithstanding the verdict, it must show
there is no evidence upon which the jury could have relied for its findings. 
Thompson v. Henderson, 45 S.W.3d 283, 287 (Tex. App.—Dallas 2001,
pet. denied).  Allchin
argues “Wadiak” (presumably Chemic) failed to
establish, as a matter of law, there was no evidence Allchin
was entitled to $51,000 and that he was entitled only to $12,000.  Chemic argues the evidence was legally and
factually insufficient to support the jury’s finding $51,000 would fairly and
reasonably compensate Allchin.  As a cross-issue, Chemic argues Allchin should take nothing on the claim for breach of
agreement to compensate.  Neither party
explains how the trial court arrived at $12,000.

            There was some evidence to support
the jury’s finding $51,000 would fairly and reasonably compensate Allchin.  It is
undisputed Allchin and Wadiak
signed the Stock Sales Contract June 27, 1996. 
Allchin testified he worked forty to fifty  hours a week
for Chemic from June 1996 until the end of the year, even though he was still
working for Kodak thirty to forty hours per week.  Beginning in 1997, Allchin
devoted all of his efforts to maximizing Chemic’s
success.  He resigned at the end of
August, 1998.  Thus, according to Allchin’s testimony, he worked approximately 26 months for
Chemic.

            Allchin
also testified he and Wadiak had an agreement each
would take a salary of $3,000 per month and ten percent commissions from
Chemic, although they would not start receiving checks immediately.  Based on accounts Allchin
claimed to have sold alone and those he claimed to have sold with Wadiak, Allchin estimated he was
owed commissions of $9,000 to $10,000. 
It is undisputed Chemic paid Allchin only
$7,000.  Given this testimony, Chemic
owed Allchin $80,000 (26 months salary at $3,000 per
month = $78,000 plus $9,000 in commissions = $87,000 minus $7,000 paid =
$80,000).  Thus, there was some evidence
supporting the jury’s finding.[6]  We sustain Allchin’s
issue two to the extent it addresses the jury’s finding on Allchin’s
damages from Chemic’s breach of its agreement to
compensate.  We overrule Chemic’s cross-issue arguing Allchin
take nothing.

            We may uphold a trial court’s remittitur only when the evidence is factually insufficient
to support the jury’s verdict.  See Larson v. Cactus Util. Co., 730 S.W.2d 640, 641 (Tex.
1987).  Weighing against the evidence
supporting the jury’s verdict is Allchin’s own
testimony he and Wadiak would initially invest in the
company until the company became more stable, and “[a]t that point in time we
would start taking those back salaries and wages out.”  Allchin initially
stayed with Kodak because he “knew [he] wasn’t going to be getting paid every
week in a salary, as in receiving a check or cash weekly or biweekly.”  The court-appointed expert did not see a
history of profitability in Chemic and found no net income stream on which to
rely in valuing Chemic.  Chemic’s expert estimated Chemic had “negligible value.”[7] 

            Although Allchin
requested the back salaries and wages, he never received Wadiak’s
“unanimous consent” to receive these amounts. 
Wadiak denied the existence of a separate
compensation agreement, contending the agreement was for fifty percent of the
profits.  Wadiak
also testified Allchin never handled a customer from
beginning to end without Wadiak’s assistance.

            Looking at all of the evidence, we
cannot say the jury’s damages finding is so contrary to the overwhelming weight
of the evidence as to be clearly wrong and unjust.  See
Cain, 709 S.W.2d at 176.  We overrule Chemic’s
cross-point.

            Attorney’s
fees.  Allchin
challenges that part of the judgment awarding Chemic
attorney’s fees.  He argues, “The jury correctly
answered Question 20.  The court erred in
signing the JNOV because the evidence was not conclusive that Chemic and Wadiak were entitled to recover attorney’s fees and
appellate fees on their claims of breach of contract and declaratory
action.”  Allchin
correctly observes, however, the trial court did not award attorney’s fees to Wadiak.[8]

            Contrary to Allchin’s
implication, however, the jury did not actually answer question 20, the
question pertaining to Wadiak’s and Chemic’s attorney’s fees. 
Question 20 was predicated on an affirmative finding to question 1a (Allchin’s breach of the Stock Sales Contract) or question 4
(Allchin’s breach of fiduciary duty), and the jury
had answered those questions negatively. 
Thus, there are no jury findings regarding Chemic’s
attorney’s fees.  Neither party objected
to the predication.  See Tex. R.
Civ. P. 274
(regarding waiver and necessity of objection to jury charge).

            Allchin
does not take issue with the amount of the attorney’s fees awarded Chemic or
develop an argument the trial court, absent a jury finding, could not award
fees.[9]  Instead, Allchin’s
argument appears to rest on the following two premises: (1) there is no breach
of contract finding in favor of Chemic on which fees could be awarded; and (2)
there is no valid declaratory judgment on which fees could be awarded.  We agree with the first premise. Allchin correctly observes Chemic did not submit a breach
of contract issue.  Thus, any attorney’s
fees awarded to Chemic must rest on the declaratory judgment.

            We disagree, however, with Allchin’s second premise. 
We have rejected his claim the declaratory judgment of the parties’
respective rights under the Stock Sales Contract and the Buy-Sell Agreement is
in error.  This declaratory judgment
supports Chemic’s award of attorney’s fees.

            We overrule Allchin’s
second issue to the extent it challenges the award of Chemic’s
attorney’s fees.

            Estoppel,
number of Chemic shares owned, and Chemic’s
value.  Allchin
argues the jury properly found (1) Allchin was not estopped from complaining of the terms of the Buy-Sell
Agreement, (2) Allchin owned 500 shares of Chemic stock as of August 31, 1998, and (3) the market value of the
total shares of Chemic stock was $300,000 as of August 31, 1998.  Chemic and Wadiak
respond these findings relate to Allchin’s
shareholder oppression theory and are immaterial because of the trial court’s
directed verdict on the shareholder oppression claim.

            In issue one, above, we rejected Allchin’s argument he was entitled to the equitable relief
of a buy-out under a theory of stockholder oppression.  We overrule Allchin’s
issue two to the extent it challenges the JNOV on the questions of estoppel, number of shares owned, and value of total
shares.

            Anticipating the possibility this
court might reject his claim of stockholder oppression,
Allchin alternatively requests this court to affirm
the part of the trial court’s order directing Chemic to purchase Allchin’s stock, but to do so consistently with the number
of shares and market value found by the jury. 
Having rejected the stockholder oppression claim, we affirm that part of
the declaratory judgment setting forth the terms of the buy-out of Allchin’s stock.

 class=Section5>

            The trial court’s declaratory
judgment rests on the provisions of the Stock Sales Contract and the Buy-Sell
Agreement.  We comment briefly on
selected provisions in relation to the declaratory judgment.

            First, we agree with Chemic and Wadiak the following provision of the Stock Sales Contract
governed the rate at which Allchin was to buy the
remaining shares of Chemic stock, but not the means by which Allchin would pay Wadiak: “The
remaining THIRTY THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($30,500.00) shall be
payable by [Allchin] to [Wadiak]
at a rate of Twenty Percent (20%) of [Allchin]’s net
income he receives in the form of commissions and/or salary from Chemic,
Inc.”  There was no evidence Allchin was to be compensated with additional shares of
stock and no evidence Allchin paid more than $1884.40
for the shares represented by the second stock certificate.  Thus, there was no evidence Allchin paid for more than 291 shares of stock.

            Second, under the Buy-Sell
Agreement, if the parties could not agree on the market value of Chemic stock, the value was to be determined by “a qualified
certified public accountant having not less than ten (10) years of active
practice.”  It is undisputed that Puckorius, Allchin’s expert, was
not a certified public accountant.  Given
the Buy-Sell Agreement, Puckorius’s testimony would
not constitute evidence of the market value of Chemic
stock.  There is, therefore, no evidence
consistent with the Buy-Sell Agreement that supports the jury’s finding Chemic stock had a market value of $300,000 as of August 31, 1998.

            Finally, we note the declaratory
judgment does not perfectly track the Buy-Sell Agreement and also there is a
discrepancy in the judgment itself.  The
judgment decrees the value of Chemic was $79,134.00 as of December 31, 1998.  This decree is consistent with the testimony
of Scott Mitchell, the court-appointed CPA, who testified he did not have data
for August 31, 1998, and he
based his valuation on financial information available for December 31, 1998.  The decree, however, does not comport with
the Buy-Sell Agreement which provided the purchase price of Chemic
stock was to based on the market value of the shares as of August 31, 1998, i.e., the last day of the month in which
Allchin terminated his employment with Chemic.  The decree also does not comport with the
trial court’s “finding” that “Scott Mitchell determined the value of Chemic,
Inc. to be $79,134.00 as of August 31, 1998,” or the trial court’s declaration
“the determination of the valuation of Chemic, Inc. as of August 31, 1998, by
the court-appointed certified public accountant is binding upon Steven Allchin.”

            Nevertheless, having reviewed the
record below and the briefs in this court, we conclude the discrepancy is
unchallenged error.  Allchin’s
post-judgment motions do not address the discrepancy in the valuation
date.  See Tex. R.
App. P. 33.1 (regarding preservation of
error).  His issues
in this court are not directed at the date of the valuation.  “It is axiomatic that an appellate court
cannot reverse a trial court’s judgment absent properly assigned error.”  Pat Baker Co., Inc. v. Wilson, 971 S.W.2d 447, 450 (Tex. 1998).

CONCLUSION

            We reverse that part of the judgment
and associated findings awarding Chemic $12,000 for
its claim of conversion and render judgment Chemic take nothing on its claim of
conversion.  We reverse that part of the
judgment and associated findings awarding Allchin
$12,000 damages for his claim of compensation against Chemic and render
judgment on the verdict that Allchin be awarded
$51,000 for his claim of compensation against Chemic.  We affirm the remaining parts of the
judgment.

 

                                                                                    

                                                                        /s/        John S. Anderson

                                                                                    Justice

 

Judgment
rendered and Opinion filed July 18,
 2002.

Panel
consists of Chief Justice Brister and Justices Anderson and Frost.

Do Not
Publish — Tex. R. App.
P. 47.3(b).

 

 











            [1]  Wadiak received an
additional $3,000 in October.





            [2]  Consistent with Hoggett v. Brown, we question whether breach of fiduciary duty should have
been submitted to the jury when the evidence did not show Wadiak
was a controlling shareholder.  See 971 S.W.2d 472, 488
n.13 (Tex. App.—Houston [14th Dist.] 1997, pet. denied). 





            [3]  Additionally, Allchin
implies Wadiak staged the August 30th break-in to
lower the market value of Chemic stock.  We find nothing in the record establishing
who was responsible for the break-in.

 

            We also observe, after Allchin’s resignation, Allchin
requested and obtained from a Chemic employee copies
of more than 20,000 Chemic documents and a computer back-up of Chemic’s accounting data through February 1999.  These facts reduce the viability of any
claims of lack of access to information.





            [4]  The trial court concluded, “The evidence at
trial conclusively established that, as a matter of law, Steven Allchin breached the Stock Sales Contract by not endorsing
the unpaid balance [sic] of 209 shares of Chemic, Inc. to Walter Wadiak.”





            [5]  The settlement was for a theft other than
that resulting from the August 30,
 1998 break-in.





            [6]  The jury, however, found Chemic owed Allchin only $51,000. 
It may have reached this figure by deducting the approximate amount Allchin still owed for the shares of stock represented by
the second stock certificate ($30,500 minus the $1,884 paid = $28,616 still
owed) from the $80,000.  





            [7]  In contrast, Allchin’s
expert, who was a water treatment consultant and who had valued other water
treatment businesses, valued Chemic at $600,000.

 





            [8]  Although the trial court found the evidence
“conclusively established” Wadiak was “entitled to .
. . reasonable and necessary attorneys’ fees” for preparation and trial in the
amount of $10,000, the judgment does not award Wadiak
any attorney’s fees.  The trial court’s
findings were improperly included in the judgment.  See Tex. R. Civ. P. 299a.  





            [9]  Allchin’s issue
regarding Chemic’s attorney’s fees is difficult to
decipher, particularly because he frames it as a sufficiency of the evidence
issue, but does not discuss evidence of the fees.  We have addressed Allchin’s
argument to the extent we are able to understand it.